HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. D. C. SMITH ET AL.

Decided November 24, 1906.

**Through Shipment—Insufficient Evidence.**

For the purpose of proving a verbal contract for a through interstate shipment of cattle the plaintiffs proved, in substance, that a third party, who

was also shipping cattle at the same time, saw defendant's agent for the purpose of ordering cars for the plaintiffs on a certain date; he told the agent that the plaintiffs wanted to ship to East St. Louis; the agent told him the cars would be ready; nothing was said as to freight rates; the cars were furnished, and after the cattle were loaded plaintiffs signed a written contract for the shipment limiting the liability of the defendant to its own road; plaintiffs did not read the contract, but thought it was the custom of defendant to ship through to destination; they had had experience in the shipment of cattle and knew that a contract was to be signed. Held, insufficient to prove a contract for a through shipment, and defendant was liable only for damages occurring on its own line.

Appeal from the County Court of Ellis County. Tried below before Hon. F. L. Hawkins.

*Baker, Botts, Parker & Garwood* and *E. P. Kemble,* for appellant.— The finding of the trial judge that there was no consideration for the written contract, and no mutuality in its execution, was without evidence to support it, the uncontroverted evidence showing that McClellan, the shipper, knew all along that he was to sign a written contract before the train could leave the station; that he made no effort to ascertain what its contents would be, but waited until his cattle had been loaded, and then went voluntarily to the agent's office, a short time prior to the hour scheduled for the departure of his train, for the purpose of executing the contract, knowing that the contract awaited his signature, and was essential for his return transportation; that the freight charges were paid after the transportation had terminated, in accordance with the provisions of the written contract, no agreement having been otherwise made as to such charges; that the legal effect of such facts was to prove that the alleged verbal contract, for which there was no consideration paid, became merged in the written contract, and the finding to the contrary being wholly unsupported by testimony sufficient to support the conclusion that the shipper had been induced to sign the contract by any false representations upon the part of the agent. Ft. Worth & D. C. Ry. Co. v. Wright, 24 Texas Civ. App., 292; Chicago, R. I. & T. Ry. Co. v. Halsell, 81 S. W. Rep., 1243; Texas & Mex. Ry. Co. v. Gallagher, 70 S. W. Rep., 97; San Antonio & A. P. Ry. v. Williams, 57 S. W. Rep., 883.

The contract of shipment having been entered into in writing, and defendant having limited its liability for damage to such as occurred on its own line, the shipment being interstate, such contract would supersede all previous oral contracts, if any, and such limitation of liability would be considered, and was lawful and reasonable. Wooters v. International & G. N. R. R., 54 Texas, 299.

*J. A. Lawson* and *J. H. Peeples,* for appellees.—The court's conclusions of fact were warranted by plaintiff's allegations and the testimony of M. A. Dillard and M. A. McClellan. The Bradstreet Co. v. Gill, 72 Texas, 117.

M. A. Dillard, as agent for Smith and McClellan and H. T. Holland as undisclosed co-principal made parol contract with appellant's agent for the shipment of their cattle to East St. Louis, on which oral contract appellee's rely. Missouri K. & T. Ry. Co. v. Carter, 9 Texas Civ. App.,

677; Southern Express Co. v. Moon, 39 Miss., 832; Gaines v. Transportation Co., 28 Ohio St., 437, 12 Texas Ct. Rep., 591; Gulf, C. & S. F. Ry. Co. v. Jackson, 11 Texas Ct. Rep., 849; Texas & Pac. Ry. Co. v. Avery, 46 S. W. Rep., 898; Southern Pac. Ry. Co. v. Anderson, 63 S. W. Rep., 1023; Gulf, C. & S. F. Ry. Co. v. Funk, 92 S. W. Rep., 1032; San Antonio & A. P. Ry. Co. v. Williams, 57 S. W. Rep., 883.

BOOKHOUT, Associate Justice.—This is a suit brought by D. C. Smith and M. A. McClellan against the Houston & Texas Central Railroad Company to recover damages in the sum of $189.25, alleged to have been sustained by them in the shipment of two car loads of cattle from Midlothian, Texas, to East St. Louis, Illinois, in the month of May, 1904.

Plaintiffs allege in their petition that on May 26, 1904, they and one H. T. Holland owned certain beef cattle which they desired to place on the market for sale in East St. Louis. That, acting for themselves and said Holland, they entered into an agreement and contract with defendant's agents, whereby, for a reasonable hire and reward, thereafter to be paid by plaintiffs and said Holland to said defendant, the said defendant promised and obligated itself to carry, haul and·transport 40 head of cattle for plaintiffs, and 11 head of cattle for· Holland, from Midlothian to East St. Louis, with ordinary speed, care and skill. That thereupon plaintiffs, acting for themselves and said Holland, did deliver to defendant, on board its cars in the town of Midlothian, 40 head of cattle for themselves, and 11 head of cattle for said Holland. That thereafter plaintiffs and said Holland paid to defendant the sum of money and reward demanded by it for its services. That on account of the negligence of defendant's agents and servants, the said cattle were delayed in transit more than two days longer than they should have been, if due care had been exercised, resulting in a shrinkage of said cattle, and their being placed on a declined market.

And plaintiffs further charge that one head of said stock was entirely lost. On account of all of which they were damaged in the aggregate sum of $189.25.

Plaintiffs further charge that on the 22d day of February, 1905, for a valuable consideration, the said Holland transferred and delivered and assigned in writing to plaintiffs all interest in damages and cause of action growing out of said shipment of said cattle, in favor of the said Holland to these plaintiffs, all of which they sue for in this case.

Plaintiffs also in their petition notify defendant company to produce in court on the trial of this cause all books, bills of lading, contracts in writing, or other evidence throwing any light on said cause and that if the same is not done, parol evidence would be introduced to prove the contents of any such writing.

Defendant answered by general and special exceptions, a general denial, and also specially pleaded that if there was any delay in the transportation of such cattle, or damage to the same, such delay or damage did not occur on defendant's line of railroad, or by reason of the negligence of its agents, servants or employes. A trial before the court without a jury resulted in a judgment for plaintiffs and defendant appealed.

The trial court filed conclusions of fact to which conclusions defend-

ant excepted. The court found substantially that the cattle were shipped on a verbal contract for a through shipment from Midlothian to East St. Louis, Illinois; and that there was no consideration for the written contract signed by the parties after the cattle were loaded in the cars. These findings are assigned as error by appellant. The appellees rely upon the testimony of the witness, Dillard, to show a verbal contract for a through shipment from Midlothian to East St. Louis. Is his testimony sufficient to show such a contract? He had cattle of his own which he wished to ship to East St. Louis and went to see the agent to order cars. He had been told by Smith and McClellan to arrange for the shipment of their cattle. He says he told the agent that Smith and McClellan wanted to ship certain cattle to East St. Louis the following Saturday; that he wanted two cars for himself and Smith and McClellan would want two for themselves, and wanted to know if they could get the cars on that date. The agent told him they could get the cars. Dillard further stated that all he did was to order the cars. Nothing was said as to the freight rates. The cars were furnished as agreed, and on the same day Smith and McClellan and H. T. Holland loaded therein 52 head of cattle. Eleven head of these belonged to Holland and the balance to Smith and McClellan. After the cattle were loaded McClellan went to the office of the agent of appellant and signed a written contract for the shipment of the cattle. He did not read the contract, nor did he attempt to read it. He testified that he did not have time to read it, nor did he ask for time. He had had experience in the shipment of cattle and knew before the shipment was made that it was the custom of the railroads to have a written contract signed up. He knew one was to be signed on this occasion. He made no effort to ascertain its contents. Smith testified he was experienced in the shipment of cattle and knew it was the custom of railroads to have a written contract or bill of lading signed up before the cattle were shipped. He had never read one over and could not state the contents. He stated the one offered in evidence looked like those that are usually signed up. He says he thought it was the custom of the Houston & Texas Central Railroad to ship clear through to the point of destination and that it was responsible for any damage occurring anywhere along the route. The defendant introduced the written contract. It contained a clause limiting the liability of the defendant to damages for injuries occurring on its own line. It was signed by Smith and McClellan.

The agent of the railroad company testified: He had been with the Houston & Texas Central Railroad Company many years, in different capacities, and knew that this was the only kind of contract that said company had ever entered into in the shipment of cattle out of the State. That it was not the custom of said company, nor did it ever ship cattle out of the State, or anywhere, except by written contract. He remembered talking with Mr. Dillard about having cars for the shipment of said cattle, and that he told him that he could get the cars; that nothing else was said about the matter, except that possibly he said that his road could give them as good time and service as any other road, and that he would have the cars ready for them on time. Nothing was said as to what the freight charges would be, or anything else than the mere arrangement or order for the cars.

It was agreed that the facts showed without controversy that no negligence was shown on the part of the agents and servants of the defendant, and that no damage to the shipment occurred on its line. That the contract was for an interstate shipment; that the damage occurred after the shipment had been delivered by the Houston & Texas Central Railroad Company to its connecting carrier; and that the written contract limited the liability of the Houston & Texas Central Railroad to such damages as occurred upon its own line.

It is clear under the facts that M. A. Dillard did not make a verbal contract for a through shipment of appellees' cattle from Midlothian to East St. Louis. All he did was to order cars for Smith and McClellan, and he so testified. Nor did Smith and McClellan seem to have considered that a contract for through shipment had been made by Dillard. They were experienced in shipping cattle out of the State and knew it was the custom of railroads to only ship out of the State on written contracts. As soon as the cattle were loaded they went to the office of the agent and signed up the contract. They did not read it and testified they had not time to read the contract and did not know it contained a clause limiting defendant's liability for injury to the damage occurring on its own road. They knew they would be required to sign written contracts. They did not ask for time to read the contract before signing it. They took a copy with them. Under the evidence their failure to read the contract was their own fault. They were not under duress, and had they asked for time to read the contract it does not appear the agent would not have held the train for this purpose. The shipment was an interstate shipment and it was lawful for the railroad to limit its liability for damages to injury occurring on its own road.

The court's conclusion that the cattle were shipped on a verbal contract for a through shipment is disapproved. We conclude that the evidence shows that the shipment was made on the written contract and that the contract is not without consideration, but a valid contract and it being admitted that the cattle were not damaged as a result of injuries occurring on the Houston & Texas Central Railroad the judgment must be reversed and here rendered for appellant.

In support of these conclusions see, Ft. Worth & D. C. Ry. Co. v. Wright, 24 Texas Civ. App., 292; Chicago, R. I. & T. Ry. Co. v. Halsell, 81 S. W. Rep., 1243; Texas & Mex. Ry. Co. v. Gallagher, 70 S. W. Rep., 97; San Antonio & A. P. Ry. Co. v. Williams, 57 S. W. Rep., 883.

*Reversed and rendered.*