# Morrison *versus* Davis and Company.

1. Carriers are answerable for the ordinary and proximate consequences of their negligence, and not for those which are remote and extraordinary.

2. Goods carried in a canal-boat on the Pennsylvania Canal, were injured by the wrecking of the boat, caused by an extraordinary flood; *held*, that the carriers were not rendered liable merely by the fact that when the boat was started on its voyage, one of the horses attached to it was lame, and that in consequence thereof, such delay occurred as prevented the boat from passing the place where the accident happened beyond which place it would have been safe.

3. The exception clause as to inevitable accidents is implied by law in favor of common carriers where it is not expressed in the bill of lading.

4. Such implication may, however, be repelled by parol evidence, showing that the carriers agreed to insure the safe delivery of the goods without any exception for inevitable accident.

5. Where carriers have advertised favourable terms of transportation as a means of acquiring custom, it is proper to presume that their customers have been induced by them; and it is not necessary, in a suit against them by the owner of the goods, for the plaintiff *to prove* that he came to a knowledge of the terms before he delivered his goods for carriage.

ERROR to the District Court of *Allegheny county*.

[Morrison *v.* Davis & Co.]

This was an action of *assumpsit* by James Morrison *v.* James M. Davis & John McFadden, partners, under the name of Davis & Co., and owners of the "Reliance Portable Boat Line," to recover damages for the loss of merchandise shipped in Philadelphia to be delivered in Pittsburgh.

The declaration contained five counts, 1. Charging the defendants as common carriers in the usual form.

2. Charging them as common carriers, and averring that they undertook and promised to take care of and safely and securely carry and convey the goods, &c., and deliver the same to the plaintiffs at the city of Pittsburgh, without any exception.

3. Averring that the defendants "undertook, and faithfully promised the said plaintiffs to guaranty the safe delivery of the said goods, wares, merchandise, and chattels for the said plaintiff at Pittsburgh, in the county aforesaid, without exception."

4. That said defendants "undertook, and faithfully promised the said plaintiffs to insure the safe delivery of the said goods, wares, merchandise, and chattels for the said plaintiff, at Pittsburgh, in the county aforesaid."

5. That they "undertook and faithfully promised the said plaintiffs to insure the said last-mentioned goods, wares, merchandise, and chattels, and to be and become the insurers thereof from the city of Philadelphia aforesaid to the city of Pittsburgh, in the county aforesaid; and in case of the loss of the said goods, wares, merchandise, and chattels, or any part thereof, or of damage or injury to the same, or of any part thereof, during the carriage, transportation, and conveyance and delivery thereof, by the said defendants, to be responsible therefor to the said plaintiff, and liable for the value thereof."

The defendants plead *non assumpsit.*

The death of James M. Davis was suggested, and the jury were sworn as to John McFadden, the survivor.

On the part of the plaintiff was given in evidence the bill of lading, as follows :—

RELIANCE PORTABLE BOAT LINE.

James M. Davis, No. 249 and 251 Market Street, Philada.
John McFadden & Co., Canal Basin, Pittsburgh.

*Philadelphia,* Oct. 1, 1847.

Received and collected the following packages, in apparent good order, marked as per margin, which we promise to deliver in like order to John McFadden & Co., on presenting this receipt and payment of freight, at our warehouse in Pittsburgh, within eight days (Sundays excepted), unless unavoidably detained, of which affidavit of captain shall be evidence, at the following rates per 100 pounds.

Railroad time, eight days.

[Morrison *v.* Davis & Co.]

(Then followed rates of freight and enumeration of packages.)

JAMES M. DAVIS & CO.,

By JOHN M. CRAIG.

It was admitted that the damage done amounted to $717.92.

The plaintiff then offered, in support of the 3d, 4th, and 5th counts, to prove by depositions, and by oral testimony, that the defendants held themselves out to the public, by advertisements in the newspapers, and by circulars sent to their customers, as insurers, and as guarantying the safe delivery of all goods carried by them, without exception; and that one of their circulars was delivered to a customer by the defendants in the presence of the plaintiff, at the time he contracted for the carrying of the goods; and also what were the declarations of the defendants at that and other times in relation to their liabilities as insurers, and particularly, that when one of the deponents asked as to his own goods, "what about the insurance?" the defendants handed him a circular; that the plaintiff was present at the time, being at the same time that the plaintiff was shipping his goods; and also to show that the plaintiff before that time had other goods forwarded by the defendants, and that they had then held themselves out to him *as insurers*.

To this offer the defendants objected, because, 1. The defendant is bound only according to the written contract.

2. The advertisements and circulars never came to the plaintiff's knowledge.

The Court sustained the objection on the first ground, to which the plaintiff's counsel excepted.

The plaintiff then offered to prove, in addition to the above offer, that he paid a higher rate of freight in consideration of the agreement to guaranty the safe delivery of said goods.

Objected to by defendant's counsel; objection sustained, *and the plaintiff's counsel excepted.*

The defendant's counsel then read in evidence sundry depositions, tending to show that the injury arose from an inevitable accident, to wit: from an extraordinary flood in the Juniata Division of the Pennsylvania Canal, and among them, depositions of the boat's crew, especially tending to show that when the boat started on its voyage, one of the horses had by an accident become lame, and that, by reason thereof, great delay was occasioned in making the voyage, without which the goods would have arrived in safety.

The plaintiff's counsel then read in evidence sundry depositions, tending to show that, notwithstanding the flood, the injury could, *by proper care, have been avoided; and also gave other* evidence, tending to show that the defendant's boat, at the time of the disaster, had not made the usual progress, nor accomplished so much of the voyage as other boats starting at the same time

P 2

[Morrison *v.* Davis & Co.]

and subsequently; and that said boat could not have reached her point of destination within the time limited in the bill of lading.

Various points were submitted on the part of the plaintiff, which the Court declined to answer further than they were answered in the general charge.

For the material points in the case, see the opinion delivered by LOWRIE, J., in this Court.

Error was assigned to the rejection of the evidence mentioned in the two bills of exception.

Also to the refusal to answer the points specifically and fully; and to the charge, as follows:—

6. The Court erred in that part of the charge having reference to the effect which the delay caused by the lame horse of the defendant had upon the excuse of the carrier; and in instructing the jury in effect "that the law does not transfer the fault of starting on the voyage with insufficient horse power, so as to make it an element in testing the inevitableness of the disaster at Piper's dam."

7. The Court erred in charging the jury that common carriers "are only answerable for the ordinary and proximate consequences of their negligence, and not for those which are remote and extraordinary." And in charging that the ordinary consequence of the fault charged in this case is the loss of time, and the penalty is measured accordingly, even though a conjuncture of other extraordinary circumstances has greatly increased the extent of the injury.

8. The Court erred in charging that, "where a carrier is guilty of delay in transporting goods, his liability is to pay for the delay. This liability is not changed by the subsequent destruction of the goods by reason of extraordinary circumstances within the influence of which they were brought by that delay. The discovery of new and remote consequences does not change the liability which attached on the happening of the fault. The law does not make this delay an element in testing the inevitableness of the final disaster."

9. The Court erred in instructing the jury, in effect, that the facts proved in relation to the lame horse, were not to be taken into consideration in deciding upon the liability of defendant for the loss of plaintiff's goods.

*Williams* and *Shinn*, for plaintiff in error.

*Shaler* and *Stanton*, for defendant.

The opinion of the Court, filed March 24, 1853, was delivered by

LOWRIE, J.—This is an action of assumpsit, and the declaration contains several counts, the two first charging the defendants as common carriers, and the others charging them on a special contract, substantially amounting to an agreement to carry safely and to insure them against all risks.

On the first two counts the evidence offered was admitted, and it appeared, among other things, that the defendants' canal-boat, in which the goods were carried, was wrecked below Piper's dam, by reason of the extraordinary flood in the Juniata division of the Pennsylvania Canal in the fall of 1847; and further, that the boat started on its voyage with one lame horse, and that by reason thereof great delay was occasioned in making the voyage, and that, had it not been for this, the boat would have passed the point where the accident occurred before the flood came, and would have arrived safely and in time.

The plaintiff insisted that inasmuch as the negligence of the defendants in using a lame horse for the voyage occasioned the loss, therefore they were liable. But the Court refused so to instruct the jury; and this is one of the principal assignments of error.

In answering this question we must assume that the proximate cause of the disaster was the flood, and the fault of having a lame horse was a remote one, which, by concurring with the extraordinary flood, became fatal. We assume that the immediate cause had the character of an inevitable accident; but that this cause could not have affected the boat had it not been for the remote fault of starting with a lame horse. The question then is, does the law treat this fault and its consequent delay as an element in testing the inevitableness of the disaster at Piper's dam? We think it does not.

In any other than a carrier case, the question would present no difficulty. The general rule is, that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may, on this account, be foreseen by ordinary forecast; and not for those which arise from a conjunction of his fault with other circumstances that are of an extraordinary nature.

Thus, a blacksmith pricks a horse by careless shoeing: ordinary foresight might anticipate lameness, and some days or weeks of unfitness for use; but it could not anticipate that by reason of the lameness the horse would be delayed in passing through a forest until a tree fell and killed him, or injured his rider; and such injury would be no proper measure of the blacksmith's liability. The true measure is indicated by the maxim *causa proxima, non remota spectatur*.

It is on the same principle that insurers against the perils of the sea are not liable for a loss immediately arising from another

[Morrison *v.* Davis & Co.]

cause, though, by the perils of the sea, the ship had sustained an injury without which the loss would not have taken place : 12 *East* 648; 2 *Bing.* 205; 12 *Mass.* 230.   And on the other hand, the insurers are liable in case of a loss by the perils insured against, though the loss would not have happened had it not been for remote negligence by the master or crew: 3 *Sumner* 270; 14 *Meeson & W.* 476; 8 *Id.* 895; 11 *Peters* 213; 5 *Barn. & A.* 171; 7 *Barn. & C.* 214; 2 *Camp.* 149.

The case of a deviation is no exception to this rule; for there the insurer is not liable because that act makes a different voyage from the one insured.

There are often very small faults which are the occasion of the most serious and distressing consequences.   Thus, a momentary act of carelessness set fire to a little straw, and that set fire to a house, and, by an extraordinary concurrence of very dry weather and high winds, with this fault, one-third of a city (Pittsburgh) was destroyed.   Would it be right that this small act of carelessness should be charged with the whole value of the property consumed?   On the other hand, these very small acts are often the cause of incalculable blessings.   A bucket of water promptly applied would have saved all that loss; but the amount saved would have been no proper measure of reward for such an act. There are thousands of acts of the most beneficial consequence that receive and deserve very little reward, because, in themselves and in their purpose, they have very little merit.

Now there is nothing in the policy of the law relating to common carriers that calls for any different rule, as to consequential damages, to be applied to them.   They are answerable for the ordinary and proximate consequences of their negligence, and not for those that are remote and extraordinary; and this liability includes all those consequences which may have arisen from the neglect to make provision for those dangers which ordinary skill and foresight is bound to anticipate.   Though they are held to the strictest care, as to the sufficiency of their ship and other vehicles, and the custody of the goods, yet no greater foresight of extraordinary perils is expected of them than of other men, and no greater penalty is visited for its failure.   The consequence which ordinary foresight may anticipate from an insufficient ship is that all the goods may be lost; their value is, therefore, the proper measure of the damage.   But the ordinary consequence of the fault charged in this case is the loss of time, and the penalty is measured accordingly, even though a concurrence of other extraordinary circumstances has greatly increased the extent of the loss.   The law does not make this delay an element in testing the inevitableness of the final disaster : 14 *Wend.* 215.

We may here say a word as to the care required of carriers when they discover themselves in peril by inevitable accident.

[Morrison v. Davis & Co.]

In such a case, the law requires of them ordinary care, skill, and foresight. This is different in different countries, depending upon the degree of civilization, and in different circumstances depending upon the degree of peril. It is commonly defined as the common prudence which men of business and heads of families usually exhibit in matters that are interesting to them. It increases as difficulties increase. In great danger, great care is the ordinary care of prudent men. Such was the substance of the instruction given on this point by the Court below, and it is right. So far, therefore, as relates to the first and second counts, there is no error, and the judgment as to them must be affirmed.

We come now to the question of evidence. The plaintiff, in support of the third, fourth, and fifth counts, offered to prove by oral testimony, connected with advertisements and circulars of the defendants, that the defendants agreed to insure the safe delivery of the goods, without any exception for inevitable accidents; and this offer was rejected by the Court, as tending to contradict the written contract.

These counts are somewhat strange; but they have not been objected to, and perhaps they sufficiently lay a contract to carry and to insure a safe delivery. It is impossible to make two contracts out of one, by ingenuity in declaring. If the reward was the consideration for carrying and insuring, a different contract is not made by charging or proving that the reward and delivery of the goods to be carried was the consideration for insuring. Both are substantially the same.

Let it be noticed, that by the bill of lading the defendants have undertaken to deliver the goods, and that they have not inserted in it the usual exception clause as to inevitable accidents. But still the exception is, *prima facie* at least, implied by law in all such contracts. The question then is, not may parol evidence be received to contradict the written agreement; but may it be received to repel an implication of a condition usually raised by the law in such cases, and which is itself, in this instance, contrary to the words as written?

A written contract creates a specified relation between the parties; and when the duties of that relation are not fully defined in the contract, the law defines them according to the circumstances. In a carrier case, it defines the duty, in part, by implying the exception against inevitable accident. But here the maxim applies, *conventio vincit legem.* The law does not imply the exemption, where the circumstances show that the parties intended that it should not be implied; and these circumstances may be shown by parol evidence. This is the very principle decided in the case of Barclay v. Weaver, 7 *Harris*, 396, argued about the same time with this; and it was there applied in the same way when it was decided that parol evidence may be given to show that an endorser

[Morrison *v*. Davis & Co.]

of a promissory note agreed to be liable without the usual demand and notice required by law. The Court was therefore in error in rejecting this evidence on such grounds: see also *Abbott on Shipping* 130 ; *Id.* 320 ; *Angell on Carriers*, sec. 222.

But the whole evidence proposed to be given is set out in the bill of exceptions; and it is argued that, if admitted, it is insufficient to prove the allegation, because the circulars contain an offer to carry and insure at one price, and these goods are contracted to be delivered at another and less price; and this argument would prevail, if the circulars were the only evidence. But they are not. There were oral testimony and advertisements besides; and we cannot say that, from all taken together, the inference of an agreement to insure would be illegitimate.

Where a man advertises favorable terms of business as a means of gaining customers, it is proper to presume that his customers have been induced by them, or that they have been repeated to them; and therefore it is not necessary that the plaintiff should prove that the advertisements came to his knowledge before delivering his goods to the defendants to be carried. The judgment as to these counts must be reversed.

Judgment affirmed as to first and second counts; and as to the third, fourth, and fifth counts it is reversed, and a new trial therein awarded.