THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY v. W. B. HENRY.

No. 15,625.   (97 Pac. 465.)

SYLLABUS BY THE COURT.

.PROXIMATE CAUSE — *Injury to Freight — Negligent Failure to
Deliver—Act of God.* As between the unjustifiable and negli-
gent failure to deliver goods from a freight-depot upon de-
mand at a time when there was no reasonable ground to ap-
prehend damage by flood, and an unprecedented flood which a
day later submerged the depot and the goods, to the damage
of the latter, the flood, the act of God, and not the negligent
omission to deliver, is the proximate cause of the damage.

Error from Shawnee district court; ALSTON W.
DANA, judge. Opinion filed July 3, 1908. Reversed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,*
for plaintiff in error.

*A. B. Quinton,* and *E. S. Quinton,* for defendant in
.error.

Railway Co. v. Henry.

The opinion of the court was delivered by

SMITH, J.: This is an action by Henry to recover damages for injury to household goods in the great flood of 1903, at Kansas City, Mo. Judgment was for the plaintiff, and the railway company brings proceedings in error.

The petition in the case alleges simply that plaintiff delivered the goods to the defendant at Topeka, Kan., to be safely conveyed to Kansas City, Mo., and there to be safely delivered, for hire, to the plaintiff; that the defendant did not safely and securely carry, nor safely deliver, the same to the plaintiff at Kansas City; and that on account of the conduct of the defendant the property was wholly lost to the plaintiff, to his damage in the sum of $2220.73. In its answer the defendant admitted the receipt of the goods on the 27th day of May, 1903, and alleged that it immediately transported the same to Kansas City, Mo., where the same arrived on the 28th day of May; that it immediately notified the plaintiff in the usual and customary manner of the arrival of the goods, but that the plaintiff failed and neglected to call for and remove the goods from the defendant's freight-house at Kansas City, Mo., until after the 31st day of May, 1903; that on the 31st day of May there was an unprecedented flood, whereby the tracks, freight-house and other property of the defendant were submerged and flooded with water, and the property of the plaintiff in the possession of the defendant was damaged; and that all the damage done to the property of the plaintiff was through the act of God, and was in no manner caused by any negligence on the part of the defendant, its officers, agents or servants. The reply was a general denial.

The undisputed facts other than shown by the findings copied below are that the goods arrived at Kansas City, Mo., on the night of the 28th of May, and were unloaded into the defendant's freight-house in the fore-

noon of the next day. During the afternoon of the day the goods were unloaded the defendant notified the plaintiff by postal cards, one addressed to his residence and one to his office, of the arrival of the goods. The plaintiff received these notices about noon of the 30th of May, and almost immediately secured a dray and went to the defendant's freight office and called for the delivery of his goods. An employee of the defendant at its freight-depot informed the plaintiff that it was a holiday and they could not deliver the goods that day, and that the cashier was not at the office. On the following day, May 31, there was an overflow of the Kaw river, and the water rose rapidly in and around the defendant's freight-depot and the goods could not be delivered for about seven days thereafter. The plaintiff received the goods under protest on the 9th day of June following, or at least notified the officers of the defendant that he did not waive his claim for damages in taking the goods. The findings of the jury on questions of fact in dispute are as follow:

"(16) Ques. Was May 30, 1903, a legal holiday under the statutes of Missouri? Ans. Yes.

"(17) Q. Was the local freight office of the defendant at Kansas City closed for business with the public at noon on May 30, 1903, for the balance of the day? A. No.

"(18) Q. Did the cashier, Storey, work at his office at the local freight-depot of the defendant during the entire day of May 30, 1903, excepting during lunch time? A. Yes.

"(19) Q. Was the assistant cashier, Morrison, at his office at the local freight-depot of the defendant at Kansas City, Mo., on May 30, 1903, up to about one o'clock in the afternoon of that day? A. Yes.

"(20) Q. Was the delivery clerk, Jewell, at the freight-house of the defendant at Kansas City, Mo., up to about noon of May 30, 1903? A. Yes.

"(21) Q. Was his assistant, Jackson, at the freight-house of the defendant at Kansas City, Mo., during the whole day of May 30, 1903? A. Yes."

"(24) Q. Was there a flood at Kansas City, Mo.,

covering the bottoms between the bluffs on either side of the Kaw, or Kansas, river on May 31, 1903, and for several days thereafter? A. Yes.

"(25) Q. If you answer the last above question in the affirmative, please state if the flood was occasioned by the Kaw, or Kansas, river overflowing its banks and spreading over the entire bottoms between said bluffs. A. Yes.

"(26) Q. On May 31, 1903, and for several days thereafter, was that portion of the bottoms upon which the local freight-depot of the defendant was located submerged with water by reason of such flood? A. Yes.

"(27) Q. If you answer the last above question in the affirmative, please state the depth of the water at or near the location of the local freight-depot of the defendant at Kansas City, Mo. A. About ten feet.

"(28) Q. How deep was the water during said flood in the local freight-depot of the defendant at Kansas City, Mo.? A. Evidence was it was six feet and eight inches.

"(29) Q. Was the shipment in question in the freight-house of the defendant at Kansas City, Mo., during the flood above referred to? A. Yes.

"(30) Q. If you answer the last above question in the affirmative, please state for how many days the shipment in question was submerged in water. A. About seven days.

"(31) Q. Was the flood of May 31, 1903, and for several days thereafter, an extraordinary and unprecedented flood? A. Yes.

"(32) Q. During May 31, 1903, did the water rise rapidly in the vicinity of the freight-depot of the defendant at Kansas City, Mo.? A. Yes.

"(33) Q. Was the flood of May 31, 1903, and for several days thereafter, at Kansas City, Mo., greater than any flood which had occurred within the past fifty years? A. Evidence showed it was.

"(34) Q. After it was discovered that the water was overflowing the bottoms and rising around the freight-house of the defendant at Kansas City, Mo., was it practicable or possible to remove the accumulated freight from the freight-depot of the defendant at Kansas City, Mo.? A. No.

"(35) Q. Was the damage to the shipment of the

plaintiff in question caused by the flood in question?
A. No; it was caused by the defendant's refusal to deliver goods in question to plaintiff when he demanded them.

"(36)  Q.  Did the flood in question extend from bluff to bluff in the Kaw, or Kansas, river bottoms in Kansas City, Kan., and Kansas City, Mo., on May 31, 1903, and for several days thereafter?  A.  Yes."

We regard it as immaterial whether May 30, 1903, was a legal holiday in the state of Missouri, as no such issue was presented by the pleadings and the jury found that the defendant's freight-office was open for business on the afternoon of that day.  There was no evidence, however, that the defendant on that day or at any time denied the plaintiff's right to the goods, but it was shown that the clerk to whom the application therefor was made simply postponed the time of delivery.  The petition does not set forth a cause of action for conversion, and, if it did, the evidence would not support such a claim.  (3 Hutch. Car., 3d ed., § 1372; 28 A. & E. Encycl. of L. 708, 709.)

The principal question in the case, then, is whether the defendant, having negligently and without proper cause failed to deliver the goods when demanded, is responsible for the damage which resulted to the goods; in other words, What was the proximate cause of the loss?  In failing to deliver his goods to the plaintiff when demanded the defendant was guilty of negligence, and the well-recognized rule is that for the negligent failure of a party to perform a duty imposed by his contract he is liable in damages to the other party for such loss as at the time of the omission would probably, or should reasonably, be expected to flow therefrom, and no other.  If one owing a duty neglect to perform it, and a cause which could not have been reasonably apprehended intervene, and loss result, the latter cause, and not the omission of duty, is the proximate cause of the loss.  If the plaintiff had not shipped the goods from Topeka the loss could not have oc-

curred, nor could it have occurred if the defendant had delivered the goods when demanded; but nearer than these causes, proximately, the flood caused the damage. Elaborate quotations and an exhaustive discussion of' this subject is to be found in *Rodgers v. Railway Co.,* 75 Kan. 222, 88 Pac. 885, 10 L. R. A., n. s., 658, and the conclusion above stated is fully sustained.

There was no evidence that at the time the defendant refused to deliver the goods the flood of the following day should have been apprehended from facts known to the defendant, or from facts generally known which the defendant, in the exercise of ordinary prudence, considering the business in which it was engaged, should have known. The defendant complains of the following instruction given by the court:

"The court instructs the jury that damage is said to be caused by an act of God when it results immediately from a natural cause, without the intervention of man, and could not have been prevented by the exercise of prudence, diligence and care by the party charged with the liability; and the defendant so charged with the liability, if he invokes the act of God as a defense, has the burden of proof upon him to show, not only that the act of God was the cause but that it was the entire cause of the damage, because it is only when the act of God is the entire cause of damage or loss, and said damage or loss could not have been prevented by the exercise of prudence, diligence and care by defendant, that the said defendant can avoid liability."

The language of this instruction is sustained in many decisions and text-books, and is a correct statement of the law when the negligence and the act of God concur in point of time. It is, however, incorrect and misleading in this case, because at the time the defendant negligently omitted to deliver the goods the evidence fails to show that it had any reasonable grounds to apprehend the calamity which overtook defendant and the plaintiff's goods. The jury's finding that the negli--

gence of the defendant, and not the flood, caused the damage naturally flowed from this erroneous instruction.

The judgment is reversed, and the cause remanded for a new trial.