W. B. HENRY, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

No. 16,643.

### SYLLABUS BY THE COURT.

1. STARE DECISIS—*Erroneous Decision on First Review May be Corrected on Second Appeal.* Ordinarily a question considered and determined on the first appeal of a case is deemed to be settled and not open to reëxamination on a second appeal, but it is not an inflexible rule, and if the prior decision is palpably erroneous it is competent for the court to correct it on the second appeal.

2. ———— *Point in the Record of First Appeal Not Considered—Determination on Second Appeal.* If the point, though involved in the record of a first appeal, is not brought to the attention of nor considered by the court, its decision then made does not preclude the consideration and determination of the point when presented on the second appeal.

3. PROXIMATE CAUSE—*Wrongful Refusal by Carrier to Deliver Goods on Demand—Subsequent Destruction by Act of God.* A railway company transported goods to their destination and notified the owner to come and take them away. In response to the notice the owner promptly called at the freight depot, tendered the charges due thereon and demanded the delivery of the goods, but the railway company refused the demand. One day thereafter an unprecedented flood occurred, which damaged the goods. *Held*, that by the refusal of the demand and the wrongful detention of the goods the railway company held them at its own risk and was responsible for the loss occasioned to them by the flood.

Appeal from Shawnee district court. Opinion filed July 9, 1910. Affirmed.

## STATEMENT.

IN this action W. B. Henry alleged that the Atchison, Topeka & Santa Fe Railway Company undertook to, and did, transport his goods, of the value of $2500,. from Topeka to Kansas City, that when the goods reached their destination and he demanded delivery of the same the railway company wrongfully refused to give him his goods, and that subsequently they were injured and destroyed. Besides a general denial, the railway company answered that it received the goods and promptly carried them to Kansas City, where they arrived about May 28, 1903; that Henry was then notified of their arrival, but that he neglected to call for or remove the goods from the station, and that on May 31, 1903, they were damaged by an act of God—the unprecedented flood of 1903—and not by the negligence of the railway company. It was also alleged that if a demand was made for the goods on May 30, 1903, it was done upon a legal holiday, and that the company's freight office was not open for business or the delivery of freight on that day, and, further, that no demand was made for the goods in business hours on any business day. On the first trial judgment was given for Henry, but for errors committed that judgment was reversed. (*Railway Co. v. Henry,* 78 Kan. 490.) The last trial was upon a transcript of the testimony given on the first trial, on which the court made the following findings of fact and conclusion of law:

## "FINDINGS OF FACT.

"(1) I find that on or about the 27th day of May, 1903, the said W. B. Henry shipped by the Atchison, Topeka & Santa Fe Railway Company certain household goods and furniture, in and for a valuable consideration, from the city of Topeka to Kansas City, Mo., there to be delivered to the said W. B. Henry.

"(2) That the said property was transported by the Santa Fe railway company from Topeka to Kansas. City, Mo., arriving in Kansas City, Mo., upon the 28th

day of May, 1903, and that upon the afternoon of May 29, 1903, notice was sent by the said company to W. B. Henry of the arrival of said property, notifying the said W. B. Henry to call and remove the same from the freight house of said company; that W. B. Henry received said notice of the arrival of said property between the hours of twelve and one o'clock upon the 30th day of May, 1903, and immediately, within one hour, went to the proper offices at the freight depot of defendant company, prepared to remove said property, as notified, and then and there demanded of said company said property, and offered to pay all charges thereon, but that the said company did, at the time of said demand, upon the 30th day of May, refuse, fail and neglect to deliver said property to the said W. B. Henry.

"(3) I further find that the said 30th day of May, 1903, was a legal holiday in the state of Missouri, and that the said day, after twelve o'clock P. M., was a legal holiday in the city of Kansas City, state of Missouri, but I further find that the said company's office and place of business was open for the transaction of business, and that said company did not recognize the 30th day of May, 1903, or any part thereof, as a legal holiday at Kansas City, Mo., in connection with the delivery of freight at its said freight depot; that the said company had its place of business open, and was transacting business upon said day, as usual, when Henry called and demanded said property.

"(4) I further find that the market value of said property in Kansas City, upon the 30th day of May, 1903, was in the sum and value of $2220.73.

"(5) I further find that upon the 31st day of May there was an extraordinary and unprecedented flood, an act of God, in the Kaw and Missouri rivers, at Kansas City, Mo., and the said property was, on the 31st day of May, wholly destroyed by said flood, while in the freight house of defendant company.

"(6) That upon making application for his shipment of goods to the clerk in the freight office at the time above mentioned, he was informed by the clerk in the freight office of the defendant that he could not obtain the shipment in question on that day, as it was a legal holiday and the cashier was not in the office; plaintiff repeated his demand for the goods and insisted on obtaining the shipment, and told the said em-

ployee that he had the change and had come prepared to take the goods, and that he wanted them; plaintiff was not told to. call again later in the day, but was informed that he could not obtain the shipment on that day, whereupon plaintiff left the said freight office and did not return or make other demands upon any other person for the shipment on that date.

"(7) That on the 9th day of June, 1903, the plaintiff received from the defendant, and receipted to it for, his shipment of the freight in question in a damaged condition, with the understanding that in so doing he waived no legal right or claim that he might have against the defendant for the ruined or damaged condition of the goods.

"(8) I further find that said property was in the freight house of the said company upon the 30th day of May, 1903, when Henry called for and demanded the same, and the said company could have delivered said property to said. Henry, but, without any just reason or proper cause therefor, wrongfully refused and neglected to deliver the same.

## "CONCLUSION OF LAW.

"(1) Plaintiff is entitled to recover judgment against defendant company in the sum of $2220.73, the reasonable market value of the property destroyed, with interest. thereon at the rate of six per cent per annum from May 27, 1903, to date, or $2763.48."

The railway company appeals.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellant.

*Eugene S. Quinton,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The appellant contends that as the testimony on which the judgment in question rests was exactly the same as upon the earlier trial the decision on the former appeal necessarily determines the result of this appeal and requires judgment in its favor. If it be assumed that no new elements were brought into the case on the second trial it does not follow that the former decision, right or wrong, is conclusively binding

upon this appeal. Ordinarily a question considered and decided on the first appeal is deemed to be settled, and, except for very cogent reasons involving palpable error, will not be reëxamined on a second appeal. Some courts hold that a decision, whether right or wrong, is conclusive in all subsequent appeals; but what is called the "law of the case" is not an inflexible rule which requires a court blindly to reiterate a rule of law that is clearly erroneous. In *C. B. U. P. Rld. Co. v. Shoup,* 28 Kan. 394, the court, after stating generally the importance of stability and uniformity in the interpretation of the law, said:

"We do not understand that the rule that a decision once made becomes the established law of the case is a cast-iron rule, and incapable of relaxation in any event. Cases may arise in which it will be very clear that the first decision was erroneous, that not only in the case at bar will wrong result from adhering to the decision but also other interests through the state will be imperiled; hence we do not doubt the power of the court to reconsider and reverse a prior decision in the same case." (p. 395.)

In the late case of *Railway Co. v. Merrill,* 65 Kan. 436, it was insisted that a ruling on the first appeal, however incorrect, was conclusive on the second; but the court again refused to sanction the theory that it was required to readopt and repeat a decision founded in serious error. Mr. Justice Smith answered the contention that a decision once announced by the supreme court must be adhered to by saying:

"This would come to us with more force if we were not now considering the same case with the same parties before the court. If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally. We are fully satisfied that the rule of the former case is shattered by the pressing weight of opposing authority, and that reason is against it. In *Ellison v. Georgia Railroad Co.,* 87 Ga. 691, the learned Chief Justice Bleckley used the following forcible language: 'Some

courts live by correcting the errors of others and adhering to their own. . . . Minor errors, even if quite obvious, or important errors, if their existence be fairly doubtful, may be adhered to and repeated indefinitely; but the only treatment for a great and glaring error affecting the current administration of justice in all courts of original jurisdiction is to correct it. When an error of this magnitude and which moves in so wide an orbit competes with truth in the struggle for existence, the maxim for a supreme court, supreme in the majesty of duty as well as in the majesty of power, is not *stare decisis*, but *fiat justitia ruat cœlum.*' " (p. 451.)

This being the well-established rule in our own state, it is unnecessary to consider or review the rulings of other states upon the binding force of an erroneous decision on a prior appeal. On the first appeal in this case no account was taken of the distinction between mere neglect of the carrier and its willful wrong in refusing to deliver the goods twenty-four hours before the occurrence of the flood. The findings specifically show that the goods arrived at Kansas City on May 28, 1903, and that on the following day Henry was notified to come and remove them from the freight depot. On the next day, and within an hour after receiving the notice, he went to the depot, tendered the amount of charges and demanded his goods, but the railway company refused to deliver them to him. It is true that May 30 was a legal holiday, but that is not a matter of consequence in this case, as the company did not recognize it as a holiday. Its place of business was open on that day, and it was transacting business as usual when the demand was made and refused. While the testimony is the same as on the former appeal, the findings in the last trial are more specific in regard to the fact that the freight depot was open for business on the day of the demand and as to the refusal of the demand. The wrongful withholding of the goods and its consequences were in the case, it is true, and might have entered into the decision on the first appeal, but the case was tried as one of mere negligence in the performance

of a duty by the carrier, like neglect in the forwarding of freight, and, following *Rodgers v. Railway Co.,* 75 Kan. 222, the case was decided on the theory "that for the negligent failure of a party to perform a duty imposed by his contract he is liable in damages to the other party for such loss as at the time of the omission would probably, or should reasonably, be expected to flow therefrom, and no other. If one owing a duty neglect to perform it, and a cause which could not have been reasonably apprehended intervene, and loss result, the latter cause, and not the omission of duty, is the proximate cause of the loss." (*Railway Co. v. Henry,* 78 Kan. 490, 494.) Now there is directly presented the effect of the tortious detention of the goods before and up to the time of the flood which injured them. The goods were there, ready for delivery. The owner was entitled to the possession of them when the demand was made. There was no excuse or justification for withholding them from him, and the refusal of the railway company to deliver them made it guilty of a willful wrong, but for which there would have been no loss. The wrongful detention of the goods is sometimes called a conversion, and while it is not a conversion in the sense that there was an intention of the company to convert the goods to its own use, yet upon the refusal plaintiff at once became entitled to maintain an action to recover the goods or their value, against which the company would have had no defense. In *Watt v. Potter,* 2 Mas. [U. S. C. C.] 77, Mr. Justice Story said:

"Whoever undertakes tortiously to deal with the property of another as his own, or tortiously detains it from the owner, is, in contemplation of law, guilty of a conversion of it." (p. 81.)

The case of *Rodgers v. Railway Co.,* supra, so much discussed by counsel, was well decided, and there is no intention to limit the rule there announced or weaken its force as an authority. Even in that case the difference between mere negligence in transporting goods

subsequently injured by an act of God and some posi-
tive wrongdoing by the carrier was recognized. Refer-
ring to cases in which it was held that there was such
a departure from the line of duty of the carrier and
such misconduct as to make it liable for goods injured
by an act of God which would not otherwise have been
injured, it was said:

"That case was one of deviation, a positive misfeas-
ance, which makes the carrier liable as for conversion.
(6 Cyc. 383; *Railway Co. v. Dunlap,* 71 Kan. 67.) Mr.
Chief Justice Tindal bases his argument upon the prop-
osition that the wrong of the master in taking the
barge out of its proper course was undoubtedly a
ground of action. The rule first appears in the law of
marine insurance, and was adopted to meet the spirit of
dangerous adventure on the part of sea rovers which
disregarded the safety of both property and life. Such
a tort-feasor is held to take all risks, as if they were
actually foreseen, and is not allowed to apportion or
qualify his wrong." (p. 236.)

In referring to an argument made in another case, in
which a loss resulted from the wrongdoing of the de-
fendant coöperating with an act of God, and where it
was impossible to say how far the act of God con-
tributed to the loss and wherein it was concluded that
the act of God was not the sole or proximate cause of
the loss, it was said:

"No one will dispute the soundness of this argument.
It has been decided that if a carrier undertake to trans-
port freight in an unseaworthy ship it makes no differ-
ence that the storm which foundered it was of unusual
severity. Hazard existed when the voyage began, and
it is not possible to determine the effect of the delin-
quency upon the final event. (*Bell v. Reed,* 4 Binn.
[Pa.] 127.) If baggage be put off in the rain without
any protection it makes no difference that the rainfall
is unprecedented. It is the carrier's duty to protect
property in its custody from exposure to rain. (*Sonne-
born v. Southern Railway,* 65 S. C. 502.) In all such
cases, and in cases of actual deviation from the usual
route, it is proper to say that an act of God must not
combine with human instrumentality, that if the car-

rier depart from the line of duty he is liable, though an act of God intervene, and that he must be free from fault in order to claim his exemption." (p. 238.)

The flood was only the remote cause of the injury and loss in this instance. While it is true that the flood was one not to be anticipated, the railway company, by withholding the goods, became, as was stated, "a tort-feasor" and "is held to take all risks, as if they were actually foreseen." The effect of the wrongful taking or withholding of possession of the property of another finally lost through the act of God is shown in *Blaker v. Sands,* 29 Kan. 551, where it was said:

"A party, not being the owner of personal property, who takes it out of the possession of the real owner, without his consent, holds it in his own wrong and at his own risk, and if subsequently judgment is rendered against him for the return of the property or its value he can not be excused from satisfying the judgment under the plea that the property has been lost in his hands, even by the act of God." (Syllabus.)

Another case of the same import is *K. C., Ft. S. & G. Rld. Co. v. Morrison,* 34 Kan. 502, where a passenger traveling with a trunk arrived at his destination and the check for the trunk was presented to the baggageman and delivery of the same demanded, but he was told that the trunk had not arrived, when in fact it had. Shortly afterward the depot in which it was kept was broken into by burglars and the contents of the trunk were stolen, and one of the questions in the case was the effect of the refusal of the demand. It was said:

"If plaintiff demanded his baggage, as testified to, and the company, having the trunk at its depot at Parsons, refused to deliver it, the company is responsible to the owner for its contents, although the trunk was subsequently broken open and robbed without its fault." (p. 506.)

In *U. P. Rly. Co. v. Moyer,* 40 Kan. 184, the responsibility of the railway company for goods wrongfully withheld from the owner was determined. The goods

were shipped from Ohio to Kansas, and after their arrival the owner demanded the delivery of them from the company and was informed by the agent of the company that they were not there. Two days later the depot was accidentally burned, and it was held that the wrongful withholding of the goods when they were demanded made the railway company liable for the loss.

It is argued that the flood was not only a concurring but that it was the proximate cause of the injury and loss. While the wrongful withholding of the goods had nothing to do with the occurrence of the flood, it did in fact cause the loss, as there would have been no loss if there had been no wrongful detention. The fact that the intervention of the flood concurred with defendant's own wrong in the injury of the goods does not relieve it from responsibility for the loss. It was said in *Davis v. Garrett*, 6 Bing., n. c., [Eng.] 716, that "no wrongdoer can be allowed to apportion or qualify his own wrong." (p. 724.) The effect of the wrongful withholding of goods from delivery after they have been received was a subject of comment in *Louisville & Nashville Railroad Co. v. Lawson*, 88 Ky. 496. There goods were shipped over a railroad, and when they reached their destination the railroad company notified the owner of their arrival. On the next day the owner demanded the goods, but was informed that they were not there. In the succeeding days several other demands were made and like answers given. The refusal, it was said, should be regarded as a tortious detention, or what is the same thing, a wrongful withholding from the owner. It was said:

"We do not mean to decide that a mere delay, by a carrier, in delivering goods amounts to a conversion. He is not bound to deliver until a demand is made. But, when made, he must know whether the property is at hand; and if it be, and he wrongfully fails to deliver it, he can not escape the charge of conversion because he did not, in express words, refuse to deliver it, but informs the consignee it has not come to hand,

8—83 KAN.

when he is bound by law to know otherwise. Such conduct on his part should be regarded as a misfeasance, and not as a mere nonfeasance." (p. 500.)

The case of *R. & D. Railroad Co. v. Benson*, 86 Ga. 203, was one where goods were directed to be shipped by a particular route, and instead of sending them directly the railroad company transported them in a roundabout way, thereby causing a delay of several days. Two days after the goods were received they were damaged by a flood. For several days before the flood the consignee sent every day to the depot of the railroad company and asked for the goods, but was informed that they had not arrived. The goods, however, were then in the possession of the railroad company, but the agent failed or refused to deliver them. The court held the refusal to deliver and the wrongful detention of the goods made the railroad company liable for the loss sustained. (See, also, *Railway Co. v. Dunlap*, 71 Kan. 67; *Railroad v. Kelly*, 91 Tenn. 699; *Richmond Railroad Co. v. White*, 88 Ga. 805; *Williams v. Grant*, 1 Conn. 487; *New Brunswick Steamboat Company v. Tiers et al.*, 24 N. J. Law, 697; 1 Hutch. Car., 3d ed., § 313; 5 Thomp. Com. L. of Neg. § 6597; 6 Cyc. 385; 1 A. & E. Encycl. of L. 594; 1 Enc. L. & P. 1111.)

The findings of fact made by the trial court warranted its conclusion of law, and its judgment is therefore affirmed.