**SCHAFF, Rec., v. ROACH.**

No. 15491—Opinion Filed July 14, 1925.

Rehearing Denied Feb. 23, 1926.

1. Carriers — Liability for Goods Burned After Negligent Failure to Deliver.

Where goods are received at their destination several days before a fire which destroyed them, the carrier who on demand of the consignee, without sufficient excuse, refuses to deliver them is liable for their loss.

2. Same—Liability as Warehouseman.

A carrier's neglect and wrongful detention of goods in its depot after delivery thereof has been withheld by the carrier, without sufficient excuse, is the proximate cause of their subsequent loss by fire and makes the carrier liable for the loss as warehouseman, although the fire was not caused by its negligence.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Oklahoma County; T. G. Chambers, Judge.

Action by Govan Roach against Charles E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

M. D. Green and H. L. Smith, for plaintiff in error.

Pierce, McClelland & Kneeland, for defendant in error.

Opinion by FOSTER, C. The defendant in error, Govan Roach, as plaintiff, recovered a judgment in the district court of Oklahoma county against plaintiff in error, Charles E.

Schaff, as receiver for the properties of the Missouri, Kansas & Texas Railway Company, as defendant, for the sum of $479.93, the alleged value of certain goods, wares, and merchandise, which had been delivered to the plaintiff in error by the Mound City Paint & Color Company of St. Louis, Mo., for transportation and delivery to the defendant in error at Oklahoma City, Okla. Parties will be hereinafter referred to as they appeared in the trial court.

It was charged that after the goods arrived at their destination in Oklahoma City, plaintiff requested defendant to make delivery of said goods, wares, and merchandise at its freight depot in Oklahoma City, which delivery was refused by the defendant, whereby it became liable to him for the value of said goods, which were later destroyed in a fire which burned the defendant's freight depot in said city.

The answer of the defendant was a general denial. It further pleaded that at the time of the destruction of said goods by fire. its liability as a carrier had been reduced to that of a warehouseman and that as such warehouseman it was without negligence. In a cross-petition it also sought to recover the freight charges on the shipment amounting to $45.72.

The cause was tried to the court and a jury, resulting in a verdict in favor of the plaintiff for the sum of $479.93, being the amount sued for, less the freight charges found to be due and owing to the defendant.

Motion for a new trial was filed by the defendant, heard and overruled, and it appeals. Several errors have been assigned as grounds for reversal. All of them are predicated upon alleged error by the trial court in giving certain instructions to the jury and in refusing to give other requested instructions.

It is first contended, in the very able brief of the defendant, that the court erred in refusing a peremptory instruction requested by the defendant in its instruction No. 1. It is established by the record, practically without dispute, that the plaintiff ordered from the Mound City Paint & Color Company of St. Louis, Mo., a quantity of goods, wares and merchandise, consisting of paints and varnishes of the value of $525.65, and that in due course of business the shipper delivered the goods to the defendant for carriage and delivery to the plaintiff at his address in Oklahoma City; that the carrier issued what is known as a straight bill of lading, which did not require, under the rules and regulations of the defendant, a

surrender of such bill of lading upon delivery of the goods to the consignee at destination. The shipment was what is known as an open shipment, by virtue of which the title to the goods passed to the consignee. The goods arrived at Oklahoma City on Monday, September 19, 1921. The bill of lading, for some reason, was delayed and did not reach the defendant for some weeks after the arrival of the goods at their destination. On the day following the arrival of the goods, the defendant's cashier mailed to the plaintiff a post card notice of the arrival of the goods and deposited the same in the U. S. post office, addressed to the plaintiff at the address shown upon the freight receipt accompanying the shipment, and indorsed upon the freight receipt a notation to that effect. This notice, however, for some reason, never reached the plaintiff, whose address had been changed from that given by the bill of lading and the freight bill. Hearing, in some manner not disclosed by the record, that a shipment of goods had arrived at the defendant's freight depot for him, the plaintiff testified that on the 21st or 22nd day of September, 1921, he called upon the defendant's cashier at its freight depot in Oklahoma City, gave his name to the agent, and asked him if he had any freight here, whereupon the agent, without referring to the freight bill, asked plaintiff if he had a bill of lading. Plaintiff replied that he did not have a bill of lading, whereupon the agent said: "You will have to get a bill of lading, I am busy." The agent then turned around and proceeded to wait on somebody else. Plaintiff then testified that he left the freight depot, relying upon the statement of the agent that it would be necessary to have a bill of lading in order to get the goods, and that on the following Saturday, September, 23rd, without again calling for the shipment, the goods were destroyed by fire which consumed the entire freight house of the defendant in Oklahoma City. Plaintiff further testified that his purpose in going to the depot was to get the freight; that he had the money to pay the freight, and that no question was raised by the agent as to a lack of proper identification. The testimony of defendant's cashier was to the effect that to the best of his recollection no such conversation as that detailed by the plaintiff occurred in connection with the request for the delivery of the shipment. It was, however, for the jury to determine whose testimony it would believe in this particular, and the jury having by its verdict found that the plaintiff's version of the transaction was correct, such finding is binding and

conclusive in this court on appeal, if no prejudicial errors appear in the instructions given by the trial court to the jury, or in its ruling upon law questions presented during the trial.

There was evidence introduced to the effect that the plaintiff, at a time when the freight was actually in the station of the defendant company, called at the freight depot during business hours for the purpose of receiving it; that he was able and willing to pay the freight charges in any reasonable amount; that he stated his name and told the agent for whom he wanted the freight; that the cashier in charge of the defendant's office, without requesting any further showing of his identity, brushed plaintiff aside with the remark that it would be necessary for him to produce a bill of lading, with the result that the plaintiff did not call at the depot again before a fire, which some two days later consumed the depot and destroyed the property. Whether or not the defendant's cashier negligently required of the plaintiff certain unnecessary things and acted in a negligent manner in the performance of his duty was properly submitted to the jury, and the jury by its verdict found such issue in favor of plaintiff.

Authorities are cited by the defendant railway company in support of the rule that, where the liability of the defendant railway company is only that of a warehouseman, the burden of proof is on the plaintiff to establish a negligent failure to properly care for the goods, and that since there is no proof in the record that the fire which destroyed plaintiff's property was caused by the negligence of the employes of the defendant railway company, the trial court should have directed a verdict for the defendant.

From such examination as we have been able to make of these cases, we think it may be said that they go no further than to hold that where the loss is due entirely to fire, and the only negligence relied on by the plaintiff for a recovery is that of a failure by the carrier to exercise reasonable precautions as a warehouseman to prevent it, the mere fact that the goods were destroyed by fire does not sustain the burden of proof and authorize the submission of the case to the jury. These cases have no application to a situation where, as here, it is shown that the loss occurred as a result of the negligent failure of the defendant to make delivery of the merchandise on reasonable demand.

While the goods in the instant case were

actually destroyed by fire, it does not necessarily follow that the loss to the plaintiff was alone due to fire. Other negligent acts by the defendant, by which the plaintiff was prevented from receiving his merchandise, are shown in the evidence which differentiates the case at bar from the cases where the loss is entirely due to a fire, and from cases where there is nothing in the circumstances connected with the effort of the plaintiff to receive his goods to indicate neglect on the part of the carrier.

It is true there is authority for the proposition that where, after arrival at destination, the goods are destroyed by an act of God the act of God, and not the negligent omission to deliver, will be regarded as the proximate cause of the damage, but this rule has no application to the facts in the case at bar.

The rule applicable to a situation of this kind is stated by the Supreme Court of Kansas in the case of Union Pacific Ry. Co. v. Moyer, 40 Kan. 184, 19 Pac. 639, where the court used this language:

"Plaintiff claims in his petition that the goods were destroyed by reason of the negligence of the company. If this was true, then that would constitute a liability on the part of the company as a warehouseman; but, as there is no evidence tending to show the cause of the fire at the depot, no negligence can be presumed. The only other circumstance we find in the evidence to show negligence is the fact that the plaintiff, through his agent, demanded the goods of the company on the 27th of November. The goods were there, and had been there, some eight days at that time, and, if they had been delivered to the plaintiff, would not have been burned on the 29th. This, we think, was negligence, such as would make the company liable as warehouseman. It was its fault that the goods were not delivered and not the fault of the plaintiff. It is true that by his fault he released the company from liability as carrier, and their relation became one in which only by the negligence of the company would it become liable for the goods; and by its refusal to deliver the goods, plaintiff must recover."

In 10 C. J. 243, paragraph 344, it is said:

"* * * Some of these decisions proceed on the theory that the carrier's liability at the time of the destruction of the goods is that of an insurer, while others hold that the negligence of the carrier in wrongfully detaining the goods is the proximate cause of the loss. However, this diversity of view is of no practical importance, since the same net result is obtained under either view."

See, also, East Tennessee V. & G. Ry. Co. v. Kelly, 91 Tenn. 699, 20 S. W. 312, 17 L. R. A. 691; Louisville & Nashville Ry. Co. v. McGuire & Co., 79 Ala. 395; Jeffersonville Ry. Co. v. Cotton, 29 Ind. 498; Burlington & M. R. R. Co. v. Arms, 15 Neb. 69, 17 N. W. 351; Meyer v. Chicago & N. W. Ry. Co., 24 Wis. 566; Levi Derosia v. Wynona & St. Peter Ry. Co., 18 Minn. 133.

The trial court committed no error in overruling the request of the defendant for a peremptory instruction.

The next proposition urged by the defendant, as ground for reversal, is that of error in the trial court in refusing to instruct the jury to the effect that the defendant was entitled to have the plaintiff identified as the owner of the goods, and the holder of the bill of lading, as set out in defendant's requested instructions 4 and 5. There is no question of the right of the carrier to have a person calling for freight identified as the owner before making delivery thereof, but this proposition is purely academic and has no application to the facts in the instant case. The shipment in question was an open shipment, and the bill of lading under which the merchandise moved was a straight bill of lading, and there was no question of plaintiff's title to and ownership of the goods. While the proof shows that the defendant's agent asked plaintiff if he had a bill of lading, there is no proof that the agent wanted the instrument or asked for it for identification purposes, nor was any question raised by the agent as to the identity of the plaintiff or his right to receive the goods in question. The weight of the evidence supported rather the theory that the defendant's cashier was seeking to get rid of the plaintiff without referring to the freight bill, then in his possession, for the purpose of making delivery of the goods, and if necessary, in the handling of such delivery, to have the plaintiff identify himself as the owner of the goods. There can be no question but that the plaintiff presented himself before the defendant's cashier under circumstances from which no other reasonable conclusion could be drawn than that the plaintiff was there to receive his freight, and the conduct of the agent in making a misleading or unnecessary requirement of the plaintiff was in violation of his plain duty to the plaintiff and amounted to negligence on his part. We think no error was committed in refusing defendant's requested instructions 4 and 5.

The defendant next complains that the trial court erred in instructing the jury upon the theory that the acts of defendant's agent in failing to deliver the merchandise to plaintiff, under the circum-

stances detailed by the plaintiff in his testimony, amounted to negligence which would make the defendant liable for the goods. It is insisted that no causal connection is shown between the alleged negligent failure of defendant's cashier to deliver the goods on demand and the subsequent loss thereof by fire, which destroyed the defendant's freight depot on September 24, 1921. We think this contention is answered in what has already been said in this opinion in considering the other proposition raised.

We have already referred to the rule that, as between the unjustifiable and negligent failure to deliver goods from a freight depot on demand, at a time when there is no reasonable ground to apprehend damage by flood, an unprecedented flood, which later submerged the depot and the goods to the damage of the latter, the flood, the act of God, and not the negligent omission to deliver is the proximate cause of damage. A., T. & S. F. Ry. Co. v. Henry, 78 Kan. 490, 97 Pac. 465. This rule, however, is not applicable here. The foundation for the rule, as we understand it, is that for the negligent failure of a party to perform a duty imposed by law, he is liable only for such loss as at the time of the negligent omission would probably or should reasonably be expected to flow therefrom, and since there is no reasonable ground to apprehend damage by an act of God, such act and not the prior omission of duty must be regarded as the proximate cause of the loss. A fire of the nature involved in this case was not produced by an act of God. Hence, in cases like the one under consideration, there is no basis for the rule that obtains where the property is destroyed by an act of God. The negligence of defendant's cashier in failing to make delivery of the goods to the plaintiff did not produce the fire which later destroyed them, but it did produce the loss in the sense that but for such conduct, the plaintiff would have removed the goods from the depot before the fire occurred.

As was said by the Supreme Court of Tennessee in the case of East Tennessee V. & G. Ry. Co. v. Kelly, supra:

"A carrier's neglect and wrongful detention of goods in its depot after the consignee has come for them, and been told that they have not arrived is the proximate cause of their subsequent loss by fire and makes the carrier liable for the loss as warehouseman, although the fire was not caused by its negligence."

In its reply brief, the defendant railway company for the first time raises the ob-

jection that the plaintiff is not entitled to recover because of failure to comply with the provisions of the bill of lading regarding the filing of his claim for damages. It is said that contrary to the provisions of section 2 of the bill of lading, which was incorporated as a part of defendant's answer, the plaintiff alleged in his petition that more than six months from the expiration of a reasonable time from the alleged date of the negligent refusal of the defendant to deliver plaintiff his merchandise had elapsed before the plaintiff had filed his claim with the defendant railway company. An examination of defendant's answer, however, discloses that this matter was not pleaded as a defense, and an examination of the entire record discloses that this question was not raised in the trial court in any form. No opportunity was presented to the trial court to make any ruling thereon, and in these circumstances, the objection cannot be raised in this court for the first time on appeal. Capitol Fire Insurance Co. v. Carroll, 26 Okla. 286, 109 Pac. 535; First National Bank of Haskell v. Lent, 77 Okla. 110, 186 Pac. 1081.

Finding no error in the record sufficient to justify a reversal, the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1, 2) 10 C. J. p. 243, § 44; 4 R. C. L. p. 749; 1 R. C. L. Supp. 1207, 4 R. C. L. Supp. p. 289 et seq.