## Kurtz v. Pennsylvania Railroad Company

*Smith & Maine*, for plaintiff.

*Pentz & Silberblatt*, for defendant.

GRIFFITH, J., forty-seventh judicial district, specially presiding, May 12, 1944.—This is an action by a shipper against a common carrier seeking to recover damages which arose by the destruction of goods by an unforeseen flood.

By stipulation, the parties agreed upon the facts and asked the court to determine whether, as a matter of law, in view of the agreed facts, defendant is liable to

plaintiff. A brief statement of the facts agreed upon follows:

Plaintiff, a manufacturer of school supplies, entered into a contract to furnish and deliver certain school supplies to the School District of Austin Borough, located in Potter County, Pa. As a result of this contract, on July 1, 1942, plaintiff delivered to defendant, a common carrier, in the Borough of Clearfield, Clearfield County, Pa., certain merchandise of the value of $436.43. Said merchandise was consigned to Austin Borough and the freight upon the same paid by plaintiff. The normal period for shipment from Clearfield to Austin is seven days, such shipment being from Clearfield to Sinnamahoning and thence to Austin. It was agreed that the merchandise in question was unreasonably delayed in shipment, as it was shipped from Clearfield to Tyrone, to Altoona, to Pittsburgh, to Erie, to Johnsonburg, to Galeton, and thence to Austin, requiring a period of 15 days. While a pick-up and delivery service was advertised, no such service existed at Austin, which was being served by the Baltimore & Ohio Railroad Company, over which shipment on the latter portion of the journey was made. The schoolhouse in Austin Borough was not damaged by the flood hereinafter mentioned. The merchandise arrived in Austin on July 15, 1942, and notice was mailed to the consignee by postcard dated 3 p.m., July 17, 1942. The entire shipment was destroyed by flood on July 18, 1942, while in the freight house of the Baltimore & Ohio Railroad Company at Austin. The flood of July 18th was unforeseen and beyond the control of the railroad company. It flooded the freight house at Austin while the merchandise was located therein. The bill of lading provided, inter alia: "(b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God . . ."

From the facts agreed upon we must find that the damage to the merchandise was occasioned by an act of God, the flood having been unprecedented and unforeseen, and beyond the control of the carrier; and that the delay in shipment was due to the negligence of the carrier.

The authorities are in conflict as to the liability of a carrier for goods lost as the result of an act of God where the carrier negligently delayed their transportation and thus exposed them to the hazard. The rule in the Federal courts, which applies to all interstate shipments, and also in many of the State courts, is that where goods in the hands of the carrier are damaged by an act of God, which the carrier had no reason to anticipate, the carrier is not liable, though there was a previous delay in transportation due to the negligence of the carrier, but for which the shipment would not have been exposed to the destructive agency causing the damage: 9 Am. Jur. 856, Carriers, §716; 46 A. L. R. 302; 13 C. J. S. 161, Carriers, §81.

On the other hand, in some jurisdictions it is held that if a shipment is negligently delayed by the carrier, and as a result is exposed to an unanticipated act of God and is thereby damaged, the carrier is liable, its negligence being deemed a cause concurring with the immediate destructive agency in bringing about the damage: 9 Am. Jur. 857, Carriers, §717; 46 A. L. R. 308; 13 C. J. S. 163, Carriers, §81.

The leading case in Pennsylvania on this subject is the case of Morrison v. Davis & Co., 20 Pa. 171. In this case a canal boat was started on its way with a lame horse, which caused considerable delay. As a result of this delay the boat was overtaken by an unprecedented flood and plaintiff's goods destroyed. Although the boat would not have been overtaken by the flood except for the delay, the court held that the delay was too remote a cause to make the carrier liable. In this case, Lowrie, J., discussed at length the doctrine

of proximate cause. He found that the delay in shipping was not the proximate cause of the loss of plaintiff's goods and said (p. 176) :

"Now there is nothing in the policy of the law relating to common carriers that calls for any different rule, as to consequential damages, to be applied to them. They are answerable for the ordinary and proximate consequences of their negligence, and not for those that are remote and extraordinary; and this liability includes all those consequences which may have arisen from the neglect to make provision for those dangers which ordinary skill and foresight is bound to anticipate."

Plaintiff contends that the case of Morrison v. Davis & Co., supra, is distinguished from this case for the reason that there defendant proved an excusable delay, viz, the lameness of the horse. With this contention we cannot agree. It appears that the boat was started with the lame horse and there is nothing in the report of the case to show that other sound horses were not available at the time the canal boat started. In fact, from the opinion, it appears that plaintiff attempted to fasten liability upon defendant by stressing the negligence of defendant in using a lame horse (p. 175). There is no doubt but that in the Morrison case defendant's negligence was an issue, and the fact that the negligence was in using a lame horse rather than in some other dereliction of duty is not, we believe, important. In none of the cases which we have examined is this distinction made.

The basis of the rule contended for by defendant is that the delay is too remote a cause and that the proximate cause of the injury, that is, the destructive act of God, could not have been foreseen and provided against as a probable result of the negligent delay. On the other hand, the basis of the rule contended for by plaintiff is that while defendant could not have anticipated the act of God, yet it is now apparent that

such delay did subject the goods to the danger, and that defendant should have foreseen that any negligent delay would extend the time during which the goods would be liable to be overtaken by some casualty. However, it seems to us that this reasoning, while seemingly worthy of some consideration, especially after the event, has little merit when it is considered as of the time the delay occurred. It appears obvious that at that time the probabilities are equal that the delay is just as likely to save the property as it is to expose it to destruction. For example, in the present case, if the goods had been shipped from Clearfield on July 11, 1942, and had required the usual period of seven days in shipment, they would have arrived in Austin just in time to have been destroyed by the flood; whereas, had they been shipped on July 11, 1942, and the same delay had occurred they would not have arrived in Austin until July 26th, or eight days after the flood, thereby preventing their destruction.

As the injury to the goods in this case was directly caused by an admittedly unforeseen flood, beyond the control of the carrier—that is, an act of God—to which injury the carrier did not directly contribute, and as such flood could not have been anticipated, nor the injury regarded as resulting from an ordinary, natural sequence or as a natural and probable result of the preceding delay in transit, the injury was not caused by defendant within the meaning of the law, and defendant is not liable.

One other matter should, perhaps, be noted. The merchandise arrived at Austin on July 15th and notice was given to the consignee by postcard dated July 17th. The flood occurred July 18th. After the goods have arrived at their destination the carrier would be liable only if it wrongfully detained the goods after a request by the consignee to deliver: Schaff v. Roach, 243 Pac. 976 (Okla.). Such a wilfully wrong withholding is in the nature of a conversion which entitles plaintiff to

maintain an action for the goods or their value immediately upon refusal to deliver: Henry v. Atchison, Topeka & Santa Fe Ry. Co., 109 Pac. 1005 (Kansas).

We, therefore, find the following

### Verdict

And now, May 12, 1944, after argument and due consideration, we find a verdict for defendant.