<hr />

No. 5969.

THE GULF, COLORADO & SANTA FE RAILWAY COMPANY
v. JOHN McCORQUODALE ET AL.

1. ACT OF GOD—COMMON CARRIER.—In an action against a railway company for damages, for failure to furnish cars, and to receive and transport cattle, the contract being that the cattle should be received on May 19. 1884, and delay was made until May 23, and a break was caused in the track on May 21, by a violent rain storm, the break being at a place which would have been passed had the cattle been shipped at any time before the morning of the twenty-first of May; *Held,* that the break in the track on twenty-first, after the breach of contract, was no defense to the action; and that the railway company was liable for all damages caused by its breach.

2. TESTIMONY NOT RELEVANT.—It was irrelevant upon the question of damages to show that the plaintiff had contracted for the sale of the cattle at their destination, and that they were refused, because not such as had been represented, and not for or on account of their condition. Such testimony did not tend to show the amount or limit of damages suffered.

3. SAME—IMMATERIAL.—It was not material error to admit testimony

that the defendant company had an ample supply of cars empty and idle at a station near the point of shipment. The defendant having pleaded and introduced testimony tending to show a crowded condition of business at the time, on the road.

APPEAL from Milam. Tried below before the Hon. W. E. Collard.

*Hefley & Wallace*, for appellant: Appellant's road bed and bridges being washed away by extraordinary and unprecedented floods, such as could not have been foreseen or prevented they would not be liable for expenses and deterioration of the cattle during the time such washout prevented the running of trains, provided appellant used care and skill in making repairs as quick as possible.

Appellant prepared the following special charge and asked that it be given to the jury, viz.: "That if the jury should find from the evidence that the defendant's road or any part of it between Temple and Fort Worth was washed away so as to prevent defendant from running their cars during the time plaintiffs were holding their cattle at Temple, and that such washout was caused by an extraordinary and unprecedented rain, such as could not have been by reasonable care prevented or foreseen, then the defendant would not be responsible for any damage done to plaintiffs' cattle occasioned by reason of their being held at Temple during the time defendant was prevented from running their trains on account of such washout, and you will not find for plaintiff any damages that they may have sustained, caused by the delay from such washout." The charge was refused and appellants saved bill of exception.

But in lieu thereof the court charged the jury in the sixth subdivision of the charge: "If the washout or flood occurred subsequent to the time the cattle were to be received, and after a reasonable time thereafter; and there was unreasonable and negligent delay before the washout in receiving the cattle so that without such delay the cattle would have passed the place where the washout occurred, the fact that there was such a washout would be no defense, but in such case the plaintiffs would be entitled to recover for expenses and depreciation of the cattle during all the time of such delay."

The cattle were presented for shipment Monday, May 19. On Wednesday, May 21, at one o'clock p. m., there was an un-

avoidable washout of appellant's road bed and bridges caused by unprecedented rains and high water at Valley Mills, between Temple and Fort Worth, preventing any trains from passing over the road from that time until one o'clock p. m., May 23, without any fault on the part of appellant. The cattle would have been received and shipped Wednesday if the washout had not occurred and they were received and shipped as soon thereafter as the repairs could be made. (R. R. Co. v. Reeves, 10 Wallace, 191; Morrison v Davis, 20 Penn. State, 171; Denney v. N. Y. Cent. R. R., 13 Gray (Mass.), 481; Gillespie v. St. L. Ry. Co., 6 Mo., 554.)

*Ford & Ford* and *J. W. Doremus,* for appellants: Is appellant excused for a breach of its contract upon the ground that the injuries to appellees' property were caused by the act of God? We think not.

The appellant sets up this defense to appellees' suit for a breach of an express contract, by delaying shipment of appellees' cattle, in consequence of which they were greatly injured, and it relies upon the cases of Morrison v. Davis, 20 Pennsylvania State, 171; Denny v. Railroad Company, 13 Gray, 481; Railroad Company v. Reeves, 10 Wall., 176. The view taken in these cases is, that the delay in transportation was the remote, and the flood the proximate cause of the injuries, and that, therefore, the carrier was not liable.

In all these cases the facts were essentially different from this case. But leaving this out of view, for the present, let us inquire whether it is the law that a carrier who, without excuse, delays the transportation of freight, and even refuses to ship in a reasonable time, is, in every case and under all circumstances, exempt from liability for injuries to such freights, occurring after and in consequence of such delays, from a a flood characterized as the act of God.

In Read v. Spaulding, 30 New York, 630; there was unreasonable delay on the part of the carrier in forwarding goods, and while they were in transit they were injured by an extraordinary flood. Had they been shipped in a reasonable time they would not have been so injured. The carrier claimed that the injury was caused by the act of God and not by delay, but it was held that the goods having been exposed to the peril by his fault, he was not excused. The court, after reviewing the cases of Morrison v. Davis and Denny v. Railroad Com-

pany, say: "These cases in Pennsylvania and Massachusetts would seem to establish the exemption of the defendant from liability in the present action."

If they are to be regarded as holding that doctrine they are certainly in conflict with numerous adjudged cases and would greatly relax the rules as to the responsibility of common carriers, and in this State, where with one exception, these rules have been rigidly adhered to, they ought not to be followed.

In Michaels v. Railroad Company, 30 New York, 564, the case of Read v. Spaulding was approved. In that case the carrier was sued for injuries to the goods while being transported. In consequence of delay by the carrier they were injured by a great flood. Its defense was that they were injured by the act of God. But the doctrine was reaffirmed that if in consequence of the fault of the carrier in delaying the shipment the goods were injured by an act of God then the carrier is liable.

Both of the cases of Read v. Spaulding and Michaels v. Railroad Company, were again approved in Condict v. Railroad Company, 54 New York, 505. In this case the court again refers to the cases of Morrison v. Davis and Denny v. Railroad Company, and also Railroad Company v. Reeves (10 Wall.) and say: "These decisions are in direct conflict with the law as settled in this State, and can not control the decision of this case."

The same view of the liability of carriers is taken in Missouri, Tennessee and Illinois.

In Pruitt v. The H. & St. Louis, etc., 62 Missouri, 542, the Supreme Court of Missouri say: "It may be well, however, to observe that the latest decisions of this court (Wolf v. Am. Express Co., 43 Mo., 421, and Reed v. St. Louis, K. C. & N. R. R. Co., 60 Mo., 199), evidently incline to the position adopted by the courts of New York, and adhered to by the courts of that State in repeated cases, notwithstanding the decisions in Pennsylvania and Massachusetts in Morrison v. Davis, 20 Pennsylvania, 171, and Denny v. New York Central Railroad, 13 Gray, 481, and the subsequent decision of Railroad Company v. Reeves, made by the Supreme Court of the United States in 10 Wallace, 176. The Commission of Appeals in New York in 1873, in view of all decisions to the contrary, including these I have just referred to, upon a re-examination of the subject, adhere to their former opinion in Michaels v. New York Central Railroad Company, 30 New York, 564, and Reed

v. Spaulding, 30 New York, 630, and Condict v. Baltimore & Ohio Railroad, 45 New York, 712. In all these cases in New York it is held that where the negligence concurs in and contributes to the injury, the defendant is not exempt from liability on the ground that the immediate damage is occasioned by the act of God or inevitable accident." See also Vail v. Pacific Railroad Company, 63 Missouri, 230.

In Illinois it is held that where a carrier by reason of negligence and delay in the transportation or delivery of freight to the next carrier in the line, the latter can not transport and deliver before the freight is destroyed by cold weather, the former carrier will be liable for the loss. (R. R. Co. v. Curtis, 80 Ill., 324.)

In Tennessee a case arose out of this state of facts: About the middle of March the Southern Express Company received from Womack goods for transportation. They were received at Prospect depot, a place in the Confederate lines, to be transported to Lynchburg. Transportation was delayed till April 7, when a Federal force captured the place and destroyed the goods. The owner sued the express company.

If the Federal force was a public enemy then the carrier could not be held liable as an insurer of the goods against it any more than it could be held to be an insurer against the act of God. The Supreme Court held that the Federal force was a public enemy, and if further held as follows: "That there was evidence in the record upon which the plaintiff in error might well have been held liable for their failure to carry the goods or return them before the time they are alleged to have been destroyed by the United States troops." * * * And the case was reversed that this question of fact as to the negligence of the carrier might be tried by a jury. (The Southern Express Company v. Womack, 1 Heisk., 271.)

In Wood on Railway Law it is said: "It is not enough that they (the goods) have been lost by the act of God if his (the carrier's) own act or negligence has in any measure contributed to bring about the injury. Thus, if he has departed from his line of duty, and has violated his contract in any respect, and while thus in fault, and in consequence of that fault, the goods are injured by an act of God, which would not otherwise have occurred, he is liable. (Read v. Spaulding, 30 N. Y., 630; Michaels v. N. Y. R. R. Co., 30 N. Y., 564. * * * * * When a carrier sets up inevitable accident, or the act of God,

as a defense, the burden is upon him to show not only that the injury resulted from a cause over which he had no control, but that his act in no wise contributed to the injury the presumption being against him." (Vol. 3, p. 1574, note 2.)

In Brown on Carriers, 95, it is said: "So if he (the carrier) delays an unreasonable long time on the journey, and it is proved that but for such unreasonable waste of time he would have been able to deposit his goods in safety it will not be a good defense to an action for the amount of injury done to the goods of an owner who entrusted them to him to be carried, to say that the injury was caused by a flood, which was the act of God."

ACKER, JUDGE. Appellant contracted with appellees to receive from them at Temple, Texas, on the nineteenth day of May, 1884, five hundred and ninety-three cattle, and furnish cars and transportation to Fort Worth. At the time agreed upon, appellees had their cattle at the place appointed, and tendered them to appellant for shipment, in accordance with the contract. Appellant refused to receive the cattle, until the evening of the twenty-third of May, and this suit was brought to recover three thousand four hundred and eighty-eight dollars damages alleged to have been sustained by appellees, in consequence of appellant's failure to comply with its contract.

The jury returned a verdict of three thousand four hundred and twenty-two dollars and eleven cents, upon which judgment was entered, but, on suggestion of the court, appellees entered a remittitur for one hundred and twenty-five dollars.

It is contended under the second and ninth assignments of error, that the appellant is not liable for damage to, and deterioration in the value of the cattle, while being held at Temple awaiting shipment.

Appellant had contracted to receive and ship the cattle on the nineteenth, and failed to comply with its contract. As a natural person would be, so it certainly is liable for any damage resulting to appellees, by reason of its breach of contract. Railway Company v. Nicholson, 61 Texas, 495. On the afternoon of the eighteenth, appellees informed appellant's agent at at Temple, that they were ready to deliver the cattle the next morning, according to contract, and the agent instructed them to have the cattle at the pens next morning, and cars would be ready to ship them. When the cattle were tendered next

morning at the pens, no cars were furnished, and appellant refused to receive them, but promised that cars would be furnished at once, and repeated this promise up to the afternoon of the twenty-first, thus inducing appellees to hold the cattle under herd, near the pens, until that time, when the agent of appellant informed appellees that there was a washout on the road between Temple and Fort Worth. Under this state of facts, it is contended that the delay in shipping the cattle, and the resulting damage are attributable to the act of God, in the unprecedented flood that broke appellant's road. It appears that this act of God was not committed until the afternoon of the twenty-first, two days after the breach of contract by appellant, and it also appears that the cattle would have passed the place of the break in the road, had they been shipped at any time after they were tendered and ready to be shipped, up to the morning of the twenty-first. We do not think that appellant can avoid liability for damages, resulting from its breach of contract, because of an act of God occurring after such breach, and we think the court did not err in so holding.

It is also contended that the court erred in refusing to permit appellant to prove that the cattle claimed to have been damaged, had been sold by appellees before they were shipped, to a party in Fort Worth, and that the reason the purchaser did not take them when they arrived in Fort Worth, on the twenty-fourth of May was, because they were not the grade of cattle represented by appellee, and not because they had been damaged by the delay in shipping. Now, we can not see what this testimony had to do with determining the issue in this case. If there was a contract, and a breach of that contract without a legal excuse for such breach, the only remaining question was, the extent of damage to these particular cattle. The question whether, or not, appellees had complied with their contract with a third party that the cattle were of a particular grade, could shed no light on any issue in this case, and we think the court did not err in the ruling here complained of.

The court permitted appellees to prove, over the objection of appellant, that there were about forty empty stock cars in appellant's yard at Temple when the cattle arrived there, and that these cars remained there until the twenty-third, when the cattle were shipped in a part of these same cars, and this is assigned as error.

Appellant attempted to explain its failure to receive and

ship the cattle up to the time of the break in the roads, upon the theory that it was greatly crowded with the business of carrying stock at that time, and could not get the necessary cars to Temple. But this would be no legal excuse for the breach of the contract, and we presume the court admitted the evidence in rebuttal of such evidence as had been offered in support of appellant's claim of inability to get the cars to Temple. There was no claim for exemplary damages, and none seems to have been given, and we do not think the evidence could have prejudiced the rights of appellant. The remaining assignment or error relates to the sufficiency of the evidence. Without reviewing the evidence, we think it sufficient to say, that there was legal evidence to support the verdict, and the verdict certainly is not against the great preponderence of the evidence. In such case, it is well settled, that this court will not disturb the verdict.

There being no error in the judgment of the court below, we are of opinion that it should be affirmed.

*Affirmed.*

Opinion adopted June 5, 1888.

STAYTON,
*Chief Justice.*