Gulf, Colorado & Santa Fe Railway Company v. Darby & Cauthen.

Decided February 5, 1902; March 5, 1902.

**1.—Carrier—Delay—Conversion—Loss by Act of God.**

Mere delay by the carrier in delivering a shipment does not amount to a conversion; and if the property is, meantime, destroyed by act of God, such as the great storm at Galveston on September 7, 1900, the carrier is not liable.

**2.—Carrier—Notifying Consignee—Pleading.**

Pleading held to charge carrier with value of shipment as on conversion, did not warrant recovery against it for delay in complying with a special promise to notify the consignee of its arrival, whereby he failed to pay the shipper's draft before its destruction by the act of God.

Appeal from the County Court of Lampasas. Tried below before Hon. D. C. Thomas.

Ballinger Mills and J. W. Terry, for appellant.

Walter Acker, for appellees.

FISHER, Chief Justice.—This is an action by appellees against the railway company to recover the value of a carload of wheat, shipped by appellees over appellant's road from the town of Lometa, in Lampasas County, to the city of Galveston, which, it was alleged, by reason of the negligence of the defendant, was never delivered to the appellees or the consignee at the place of destination. Appellees recovered the full value of the carload of wheat.

The testimony shows that there was a few days delay in transporting the wheat to Galveston and in keeping the same by the carrier at that point before the disastrous storm that occurred there on September 7, 1900, by which most of the wheat in the car was destroyed. After the storm a part of the wheat in the car was recovered, and it was retained in possession of the railway company for several months without being accounted for and delivered to the appellees. Plaintiffs' cause of action is in effect one of conversion of the entire carload of wheat; but it does not appear from the facts that such an unreasonable length of time had elapsed from the time that the wheat should have arrived before the occurrence of the storm by which it was partially destroyed as would authorize the conclusion that such delay amounted to a conversion. A mere delay of a carrier in delivering the shipment is not usually held tantamount to a conversion of the property. Bolling v. Kirby, 24 Am. St. Rep., 793, and notes thereto on pp. 108, 815, 816. And if the property in the meantime is destroyed by the act of God, the carrier will not be held liable. This principle is recognized in the recent case of Railroad v. Bergman, 64 Southwestern Reporter, 999, in which it was also held that the storm in question was of such an unprecedented character that it could not have been anticipated and guarded against by the exercise of the utmost diligence, and we think that case is decisive of the questions presented in this case under appellant's assignments of errors, except as to that portion of the wheat which was, after the storm, recovered by the appellant. We think the conduct of appellant relating to the wheat that was afterwards recovered would make it liable for its value. The delay in accounting for it and restoring it to the parties that were entitled to it was unreasonable; and the trial court, under the facts stated, would be authorized to render judgment against the railroad for the value of the wheat so recovered.

For the reasons stated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

OPINION ON REHEARING.

FISHER, Chief Justice.—Our reference in the original opinion to the case of Bolling v. Kirby, 24 American State Reporter, was made for the purpose of directing · attention to the authorities cited in the notes of the reporter to that case, to the effect that, under a contract of shipment, the carrier would not be held liable for the total value of the goods where the negligence or the breach of the contract consisted merely in delay in transportation and delivery. That in order to hold the carrier liable for the full value, the delay must be of such a character as would authorize the inference that the carrier had converted or appropriated the goods, or refused to account to the owners therefor. The cases referred to in the notes of the reporter were examined by us, and they were found to be in point upon this subject.

Suppose that the plaintiffs in this case had sued the appellant upon the same grounds stated in the petition for the full value of the goods on the 7th day of September prior to the storm that destroyed the property, and the carrier had tendered delivery in accordance with the contract upon that day, would the plaintiffs have been permitted, in view of this fact, to recover a judgment for the full value of the goods? We think clearly not. The cause of action up to that time would have been simply for damages arising from the delay. If the suit had been to recover the total value of the property with interest, the carrier could have defeated the action to that extent, by tendering the goods to the consignee or the plaintiffs. This rule is virtually, in effect, conceded by all of the authorities that we have examined upon this subject, and it is not in conflict with the rule announced in Ryan v. Railway, 65 Texas, 18, and Railway v. Manufacturing Company, 14 Southwestern Reporter, 785. Those cases hold that where there is a clause in the contract exempting the carrier from liability by reason of events that may subsequently occur, the carrier will not be relieved from liability where its negligence had a tendency to cause the occurrence which destroyed the property. There is absolutely no relation existing between the negligence of the carrier in this case in delaying the shipment and delivery and the disastrous storm by which the property was partially destroyed. Of course, it is needless to say that the act of the carrier had no tendency whatever in producing the storm; that was an act over which the carrier had not, and could not, in the nature of things, have any control whatever. It was an intervening cause with which the original negligence of the carrier was in nowise proximately connected. It was unforeseen and could not, in the nature of things, have been guarded against. From the time that the carrier received the shipment, and from the time of its failure to deliver to the consignee, it could not certainly have anticipated that such a destructive storm would arise as would destroy the property or prevent the carrier from complying with its contract, by which it agreed to deliver the property in question to the consignee.

In subdivision 3 of the motion for rehearing, the appellees make this statement, in complaining of the opinion of this court: "Because it appears from the opinion that the court ignored the fact that this suit was brought to recover damages for breach of a special contract of shipment, in which appellant expressly undertook and agreed to notify the consignee, Texas Star Flour Mills, of the arrival of the wheat in Galveston, and it conclusively appears from the evidence that appellant held the wheat in Galveston for more than three days before the storm and never notified consignee of its arrival, as it had contracted to do; when if it had done so, the appellees' draft for the value of the wheat would have been paid two days before the storm."

We said in the original opinion that the plaintiffs' cause of action was in effect one of conversion, to recover the total value of the wheat. Whatever name may be given to the plaintiffs' cause of action, it is clear that a judgment rendered in such case would have the effect, and the action would be in its nature of the character named by us in the opinion. In determining what is the character of the cause of action, and what are the grounds that authorize recovery, we look to the plaintiffs' petition to ascertain these facts, and such was done in this case. The plaintiffs' petition states a case in which it was sought simply to recover the value of the property, based upon the failure of the railway company to promptly transport and deliver it to the parties to whom it was consigned at Galveston. There is not one word in the petition indicating or charging any breach whatever upon the appellant of a failure or refusal to notify the consignee of the arrival of the wheat. If the plaintiffs sought to base their cause of action upon the failure of the appellant to notify the consignee of the arrival of the wheat, they should have made some statement to this effect in their pleadings, but it was not done. We are not at liberty, in order to support the judgment of a trial court, to go outside of the record and make a case not presented by the pleadings, although there might be some evidence bearing upon such a question.

We have given this case very careful examination, and are still of the opinion that the authorities cited in the notes to the case reported in 24 American State Reports are in point; and according to the case made by the pleadings of the plaintiffs it is controlled by the decision of the Court of Civil Appeals in Railway v. Bergman, 64 Southwestern Reporter, 999.

The motion is overruled.

*Overruled.*