EAGLE PASS LUMBER CO. v. GALVESTON, H. & S. A. RY. CO.

(Court of Civil Appeals of Texas. San Antonio. Feb. 11, 1914. Rehearing Denied March 11, 1914.)

1. CARRIERS (§ 100*)—DEMURRAGE—DELAY— PAYMENT OF FREIGHT—REFUSAL TO ACCEPT CHECKS—PROXIMATE CAUSE.

In an action by a shipper against a carrier to recover demurrage paid, the carrier was not liable by reason of delay in shipments, so that the cars arrived at a time of money stringency, when the carrier refused to accept plaintiff's checks for freight because the checks would not have been then paid by the drawee banks, though the drawer had ample funds to pay them, since the negligence or default of a railroad company under such circumstances was not the proximate cause of the loss.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. § 100.*]

2. NEGLIGENCE (§ 136*)—PROXIMATE OR REMOTE CAUSE.

The question of remote or proximate cause of loss is one of law to be decided by the court.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

3. TRIAL (§ 139*)—QUESTIONS OF LAW OR FACT—DIRECTION OF VERDICT.

Where the evidence is such that under the most favorable view of it from plaintiff's standpoint it would not sustain a verdict, the court should instruct a verdict for defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

4. CARRIERS (§ 198*)—TRANSPORTATION OF FREIGHT — DEMURRAGE — CREDIT — DISCRIMINATION.

A carrier may lawfully require one shipper to pay freight charges in cash before delivery of the goods and extend credit to another shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 901; Dec. Dig. § 198.*]

5. LIMITATION OF ACTIONS (§ 127*)—COMMENCEMENT OF ACTION — AMENDMENT OF PLEADING—NEW CAUSE OF ACTION.

Where an original petition sought to recover demurrage accrued and paid to a carrier, on the ground that the demurrage accrued while the shipper was trying to raise the money to pay the freight because the banks refused to cash his checks owing to a financial panic, and the carrier refused to accept checks in payment from plaintiff while extending credit to the other shippers, a further cause of action added by an amendment over four years later seeking to recover the demurrage because of want of sufficient notice of the arrival of the cars stated a new cause of action and was barred by limitations.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 543–547; Dec. Dig. § 127.*]

Appeal from District Court, Maverick County; W. C. Douglas, Judge.

Action by the Eagle Pass Lumber Company against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes.

J. R. Sanford, of Eagle Pass, and McFarland & Lewright and W. H. Kennon, all of San Antonio, for appellant. Baker, Botts, Parker & Garwood, of Houston, Boggess & Smith, of Del Rio, and W. B. Teagarden, of San Antonio, for appellee.

CARL, J. The Eagle Pass Lumber Company, appellant, sued the Galveston, Harrisburg & San Antonio Railway Company, appellee, to recover $1,160 alleged to have been paid by appellant to appellee as demurrage charges on 67 cars of lumber and building material. The original petition charged that between July 1, 1907, and December 31, 1907, appellant had shipped into the town of Eagle Pass over appellee's railway 491 car loads of lumber; that during the months of November and December of said year 1907 there was what was known as a financial panic; and that nearly all banks in the United States (including those in Eagle Pass) refused to pay cash on checks except in very limited amounts; and, although appellant was solvent and had money in the banks of Eagle Pass to pay its checks for the freight on said cars of lumber, the banks would not pay them, and demurrage charges accrued which appellee forced appellant to pay in the sum of $1,160. It is also alleged that, by reason of the failure of the railway company to deliver said cars of lumber promptly, said cars reached Eagle Pass during the months of November and December, 1907, in bunches; and that during those months more cars were delivered than plaintiff could unload or secure the money with which to pay freight; that, if the railway company had delivered same promptly, it would have received the greater portion before said financial stringency came on and could have raised the money to pay the freight charges promptly; and that, while plaintiff was endeavoring to raise the money with which to pay the freight charges, the demurrage charges accrued, which the lumber company paid under protest, amounting to $1,160. It is further alleged that "between and including July 27, 1907, and December 31, 1907," plaintiff had shipped over appellee's road 147 car loads of lumber to Eagle Pass, and that said shipments were delayed from 1 to 110 days, and it is claimed that because of such delays in delivery, and because plaintiff believed its checks would be received for freight and the railway refused to accept same, the damage on account of demurrage accrued. This petition was filed May 13, 1909. The petition alleged solvency of the plaintiff.

A general demurrer and various special exceptions to the petition were filed; and on June 5, 1913, the appellant filed its first amended original petition, in which practically the same allegations were made as in the original petition, and, in addition, that it had no legal notice of the arrival of said 67 cars of lumber on which demurrage was charged and on information and belief says no such notice was given; that appellant was discriminated against, because checks of other shippers were received by appellee in payment of freight at the same time its checks were refused; that appellee failed to place said cars on the tracks of plaintiff where they could be unloaded and did not comply with the law in reference to notice and placing cars to be unloaded.

By trial amendment, filed June 5, 1913, plaintiff substituted, for paragraph 11 of its amended petition, an allegation that rule 3, sections 1, 2, and 3, of the Texas Car Service Association of Revised Rules issued by the Railway Commission of Texas, was in full force, section 1 thereof prescribing the manner of giving notice of the arrival of cars and how served, which is a written notice delivered in person, or left at the place of business of the consignee, etc. Section 2 provides that telephone notice is not legal, and, if given that way, it must be followed by written notice. Section 3 provides that when cars are set prior to notice free time shall be counted only from time of service of notice. It is alleged that these rules applied to all shipments made up to December 10, 1907, and after that date the rule announced in Circular No. 2,702 of the Railway Commission dated November 29, 1907, applied. Failure to receive notice under either of these rules was alleged and given as an additional ground of recovery.

Defendant filed a general demurrer and numerous special exceptions, and the court permitted plaintiff to file its trial amendment as aforesaid. Defendant resubmitted its general demurrer and special exceptions, whereupon the court sustained the general demurrer and section D of the third exception which raises the question that paragraphs 11 and 14 of the amended petition show that the cause of action therein asserted was barred by two years' limitation. Paragraph 11 of the petition alleges that appellant never received written notice of the arrival of the 67 cars of lumber for which demurrage was charged, and paragraph 14 alleges that the railway refused and failed to place said cars, and to deliver same at the most available point, and did not comply with the rules of the railway commission with reference to placing said cars. Plaintiff declined to amend further, and the cause was dismissed. From that judgment this appeal is taken.

[1] It will be noted that the original petition seeks to recover the $1,160 demurrage collected by reason of the delay in the shipments and because the railway company refused to accept appellant's checks for freight. The only reason assigned for the failure to pay the freight charges was that the panic of 1907 came on and the banks would not pay appellant's checks, although it had ample funds therein to pay the same. The railway company would only be liable for those things which its negligence proximately caused and

which the company might have anticipated would be caused by its delay or negligence. In Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, Chief Justice Willie says: "If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken." This last as to intervening causes. Chief Justice Gaines, in referring to the above case, in T. & P. Ry. Co. v. Bigham, 90 Tex. 227, 38 S. W. 164, says: "It follows that in our opinion the question of probable cause ought to depend upon the further question whether a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily the precise actual injury, but some like injury, produced by similar intervening agencies." It can no more be said that the railway company could anticipate the injury complained of than could the lumber company have anticipated the panic. And if the lumber company could have done this, there would be no cause of complaint; because it says that it had the money there but could not get it on account of the panic having come on. "An injury which could not have been foreseen or reasonably anticipated as the natural and probable result of an act of negligence is not actionable, because it is not the proximate cause, but either the remote cause, or no cause whatever, of the damage." Kreigh v. Westinghouse, C. K. & Co., 152 Fed. 120, 81 C. C. A. 338, 11 L. R. A. (N. S.) 685. In I. & G. N. Ry. Co. v. Bergman, 64 S. W. 999, it is shown that cotton was shipped to Galveston and was in the company's yards, when the unprecedented storm occurred, September 8, 1900, and the cotton was lost. The company was guilty of negligence in failing to forward and deliver the cotton at an earlier date. The court submitted the cause to the jury on the theory that the company was liable for its negligence in failing to promptly forward and deliver the cotton. The Galveston Court of Appeals held that the storm was the cause of the loss and would acquit the railway of liability, since it did not appear that the loss was the natural and probable result of the negligent act or omission. And so it was held by Mr. Justice Speer in Hunt Bros. v. M., K. & T. Ry. Co. of Texas, 74 S. W. 69, and our Supreme Court denied a writ of error.

[2, 3] The question of remoteness is one of law to be decided by the court. Brandon v. Mfg. Co., 51 Tex. 121; Hilje v. Hettich, 95 Tex. 327, 67 S. W. 90. Where the evidence is such that under the most favorable view of it from the plaintiff's standpoint it would not sustain a verdict, it is the duty of the court to instruct for the defendant. Murphy v. G., H. & N. Ry. Co., 96 S. W. 940. And where the allegations of a petition, if supported by proof, would not entitle the plaintiff to recover, a general demurrer should be sustain-

ed. So when the plaintiff in this case sues for the demurrage collected and shows that the reason the damage accrued was because it could not get the money to pay the freight, although there was delay in delivery, no cause of action is shown; for if it had had the money to pay the freight there would have been no cause for complaint. Suppose the lumber company had a claim for damages by reason of delay in shipment, and still let the cars stand till demurrage charges had accrued, would it be contended that the demurrage could be avoided simply because there was a cause for damage by reason of the delay in the shipment? We think not.

[4] But it is contended that appellee had accepted appellant's checks in payment of freight so long that it had become an established custom upon which appellant had a right to rely, and further that other shippers' checks were accepted while appellant's were refused, and that thereby a discrimination against the lumber company was shown. The extension of credit is a matter of judgment and personal choice. A man may be perfectly solvent for 40 years and then become hopelessly insolvent over night. One of the essentials of successful business is to know to whom credit should be extended. We doubt not that appellant was and is perfectly solvent and entitled to full credit; but this court will not deny to the individual the right to extend or deny credit to whomsoever he sees fit. A check was not a tender of the freight, unless appellee chose so to accept it.

That a railway company may lawfully require one shipper to pay freight charges in cash, and at the same time extend credit to another, seems to be well established. Brown & Brown Coal Co. v. Grand Trunk System (1910) 159 Mich. 565, 124 N. W. 528, 29 L. R. A. (N. S.) 840; Randall v. Railway, 108 N. C. 612, 13 S. E. 137; Gamble-Robinson Com. Co. v. Railway, 168 Fed. 161, 94 C. C. A. 217, 21 L. R. A. (N. S.) 982, 16 Ann. Cas. 613; Russell v. Miller, 98 Miss. 185, 53 South. 495; Little Rock & M. R. Co. v. St. Louis, S. W. Ry. Co., 63 Fed. 775, 11 C. C. A. 417, 26 L. R. A. 192; Am. Law Review, vol. 45, p. 447.

[5] In the original petition appellant says that the demurrage accrued while it was trying to raise the money to pay the freight. It was not therein contended that the demurrage was unlawfully or wrongfully collected. But in the amended petition filed June 5, 1913, over four years later, for the first time it was alleged that no notice of the arrival of the cars was given as required by law, and for that reason the company had no right to collect demurrage. Up until this time the failure to give notice had not been made cause for complaint, but delay in shipment; the refusal to accept the lumber company's check, and discrimination were relied upon. In Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, it is said that the most satisfactory tests, as to whether a

new cause of action is set up in the amendments, are: "(2) Would the same evidence support both of the pleadings?" "(4) Are the allegations of each subject to the same defenses?" Certainly it cannot be contended that a pleading which predicates the action upon delay, discrimination, and refusal to accept the lumber company's check would be supported by proof that the company had not had notice and that the rules of the Railway Commission had not been complied with. And, vice versa, proof that would support the latter would be irrelevant as to the former. Judge Brown, in the case mentioned, says: "It is not sufficient that the causes of action be similar in their nature, but they must be essentially identical." Can this be said of the causes of action set forth in the original petition and in the amended petition and trial amendment? Lynch v. Ortlieb, 87 Tex. 590, 30 S. W. 545; Bigham v. Talbot, 63 Tex. 271; Booth v. Houston Packing Co., 105 S. W. 46; Railway v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983.

So, under the above authorities, it is clear that no cause of action was shown until the amended petition was filed (if then), and, since the only basis that could possibly entitle appellant to recover was barred at the time it was filed, the court was correct in sustaining the demurrers and in dismissing the cause when the plaintiff declined further to amend.

What we have said disposes of all the assignments of error adversely to appellant.

The judgment is affirmed.