## FT. WORTH & D. C. RY. CO. v. MORGAN. (No. 8233.)

(Court of Civil Appeals of Texas. Ft. Worth. June 26, 1915.)

1. CARRIERS ⚌230 — SHIPMENT OF LIVE STOCK—ACTIONS FOR DAMAGES—INSTRUCTIONS.

Though in an action for damages to a shipment of cattle, the original petition alleged that the damages were proximately caused by defendant's breach of a contract to ship the cattle on a particular day, so as to reach a particular market, the court did not err in defining negligence in its charge, where the answer alleged that the delay was not caused by defendant's negligence, but by the burning of a railway bridge, and a supplemental petition alleged, in addition to what had been originally charged, that defendant was negligent in failing to properly bed the car in which the shipment was made.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ⚌230.]

2. CARRIERS ⚌213 — SHIPMENTS—LIABILITY FOR DAMAGES.

To the extent that delay in transporting a shipment of cattle was caused by the inability of the carrier's train to cross a burned bridge, which burned without fault on the carrier's part, it was not liable, and it was error to charge that, if there was an agreement to ship the cattle on a particular day, the burning of the bridge, though unavoidable, would be no defense for any damage resulting from the failure to comply with the contract.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 920–922; Dec. Dig. ⚌213.]

3. CARRIERS ⚌230—LIVE STOCK — DELAY — INSTRUCTIONS.

Where, in an action for delay in the transportation of a shipment of cattle, the evidence seemed to show that statements by the carrier's dispatcher were rather in the nature of information as to when a train to take the cattle might be expected than a specific contract to ship them on any particular day, and it appeared that plaintiff expected to, and subsequently did, sign a contract for the transportation of the cattle which expressly provided that the cattle were not to be transported within

any specified time, nor delivered at destination at any particular hour, nor in season for any particular market, an instruction submitting the issue of a special contract to ship the cattle on July 21st, in time for the market of July 22d, was at least misleading.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

4. CARRIERS ☞230—ACTIONS FOR DELAY IN TRANSPORTATION — INSTRUCTIONS—MEASURE OF DAMAGES.

In an action for delay in the transportation of a shipment of cattle, the court charged that the measure of damages would be the difference in the reasonable market value of the cattle at their destination in the condition that they would have been, had they arrived there in the ordinary condition and usual time, and without any negligent delay, and their condition at the time when they did arrive there, and that, if the market was lower on the day the cattle were sold than on the day they should have arrived, plaintiff would be entitled to recover such difference. *Held,* that this was erroneous, as the measure of damages was the difference in the market value of the cattle at their destination in the condition in which they were delivered, and in the condition in which they should have been delivered, had the shipment been without negligence, and this difference includes, not only depreciation in weight and stale appearance caused by the delays charged, but also any decline in the market, and the charge authorized a double recovery for the decline in the market.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 961, 962; Dec. Dig. ☞230.]

Appeal from Wichita County Court; Harvey Harris, Judge.

Action by J. R. Morgan against the Ft. Worth & Denver City Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Carrigan, Montgomery & Britain, of Wichita Falls, Thompson & Barwise, of Ft. Worth, and F. S. Jones, of Wichita Falls, for appellant. Fitzgerald & Cox, of Wichita Falls, for appellee.

CONNER, C. J. The appellee recovered a judgment for damages alleged to have resulted to a car load of his cattle shipped from Burk Station, in Wichita county, to Ft. Worth. As alleged in his original petition, the damages were proximately caused by a breach of a contract on appellant's part to ship the cattle from Burk Station on the 21st day of July, so as to reach Ft. Worth in time for the market of July 22d. The defendant answered, among other things, that the delay, which was at Burk Station before the transportation began, was not caused by its negligence, but by the burning of a bridge on a line of railway between the shipping points named.

[1] The objection to the court's definition of negligence, on the ground that the plaintiff's cause of action was based alone on a breach of the contract and not upon a tort, is not maintainable, for the reason that the issue of negligence was not only raised by the defendant's answer, but also expressly presented in the plaintiff's supplemental petition, which, in addition to what had been originally charged, alleged that appellant had been guilty of negligence in failing to properly bed the car in which the shipment was made.

[2, 3] There was error, however, on the part of the court in the following instruction to the jury:

"If you find that there was an agreement to ship plaintiff's cattle on the 21st day of July, 1914, then you are charged that, even if the burning of the Pease River bridge was unavoidable, it would be no defense in this case for any damage that resulted by reason of a failure to comply with said contract; that is, if there was any damage."

There was evidence tending to show that on the morning of July 20, 1914, without fault on appellant's part, the bridge specified in the defendant's answer had burned, and that the repairs on the same had not been completed so that trains could cross it until about 6 o'clock p. m. on the night of July 21, 1914. There was also evidence subject to the construction that the delay in the shipment from Burk Station was caused, in part at least, by the inability of appellant's trains to cross the burned bridge, and to the extent that the delay was so caused appellant should not be charged. See Railway Co. v. Noelke, 125 S. W. 969; Weesen v. Missouri Pac. Ry. Co., 175 Mo. App. 374, 162 S. W. 304; Simkins on Contracts and Sales (3d Ed.) pp. 572, 573; 4 R. C. L. 742, par. 210, and authorities cited. Moreover, we very much doubt whether the evidence authorized in any form a submission of the issue of a special contract to ship the cattle from Burk Station on July 21st in time for their arrival in Ft. Worth for the market of July 22d. It appears that Burk Station had cattle pens, but was without an agent, or shipping or watering facilities, and the substance of the evidence tending to show the special contract alleged substantially appears in the following testimony by the appellee:

"I was here in Wichita Falls on the morning of July 21, 1914, and called up the Denver for a car to be placed at Burk Station for cattle to be shipped to Ft. Worth, and they advised me to call the dispatcher's office, which I did, and the dispatcher said that he did not know for certain whether he would be able to have a train by there that day or not, on account of burn-out on Pease River bridge, but would know later on in the day. In order for me to get my cattle together, I had to leave Wichita Falls on the Electra Local, and went to Fowlkes Station, and a man met me there with a horse, and we got the cattle and started to the Burk pens with them. We got as far as Burnett's ranch, and I left my man with the cattle, and went there and phoned, and called the dispatcher, and he said they had already placed the car there and would be able to move my cattle that evening; that there would be a train along there that evening about 2 or 3 o'clock, and I put the cattle in the pens and waited there for the train. I penned my cattle between 10 and 11 o'clock that morning. My object in calling up the dispatcher after I had gathered my cattle was I did not want to pen my cattle until I found out for certain whether he could move them that day and he had told

me that he would know later in the day, and there was nothing else to do but to call him up and find out whether there would be a train. * * * My cattle remained in the pens there at Burk station until about 2 o'clock that night before a train came along that could have moved them. This train that came along did not take my cattle. The train slowed up, and one of the train crew dropped off of the engine as the engine came to the pens, and ran over to the pens and shone his lantern over to top of the pen, and jumped off and ran back and caught the caboose by the time it came by, and they pulled out. I was near the pens, but I was not at the pens, where my cattle were."

These statements by appellant's dispatcher seem to be, in the nature of mere information, in answer to appellee's inquiries as to when a train to take the cattle might be expected at Burk, rather than as amounting to a specific contract to ship them at any particular day. In addition to this, appellee further testified that he accompanied the shipment; that he got away from Burk Station with his cattle about 6 o'clock p. m. on July 22d; that he had a fairly good run to Ft. Worth, and that his cattle were not damaged in transit. He further testified that:

"At the time when I called up the dispatcher to see about getting a car to ship my cattle, I knew that I would be expected to sign a contract, and I expected to sign one; and the contract I signed was what I had been accustomed to doing under the same conditions. * * * Wichita Falls is a terminal, and I signed this contract at the terminal. I made no objection to signing the contract here."

Shipping contracts executed under similar circumstances have often been held to supersede previous verbal agreements relating to the same subject. See H. & T. C. Ry. Co. v. Smith, 44 Tex. Civ. App. 299, 97 S. W. 836; S. A. & A. P. Ry. Co. v. Barnett, 27 Tex. Civ. App. 498, 66 S. W. 474; Chicago, R. I. & T. Ry. Co. v. Halsell, 36 Tex. Civ. App. 522, 81 S. W. 1243. The contract referred to by the witness as the one signed by him at Wichita Falls was pleaded by the defendant and read in evidence, and contained an express provision that the live stock covered by it "is not to be transported within any specified time, nor delivered at destination at any particular hour, nor in season for any particular market." So that, on the whole, as it seems to us, it was misleading, to say the least of it, to undertake to submit the issue of a special contract as alleged by the plaintiff in his original petition.

[4] We are of opinion the court also erred, as assigned, in his charge on the measure of damages, which reads as follows:

"If you find for the plaintiff in this case, the measure of damages (if any) would be the difference in the reasonable market value of his cattle at Ft. Worth, Tex., in the condition that said cattle would have been had they arrived there in the ordinary condition and usual time, and without any negligent delay. and their condition at the time when they did arrive there. And if the market was lower on the day his cattle were sold on said market than the same cattle were on the market of July 22d, he would be entitled to recover said difference."

There was evidence tending to show that, in addition to the stale and injured condition of the cattle caused by the delay at Burk Station, there was a decline in the market between the 22d and 23d days of July, on account of which the plaintiff claimed damages. Plaintiff's measure of damages was the difference in the market value of his cattle at destination in the condition in which they were delivered and in the condition in which they should have been delivered had the shipment been made without negligence. This difference includes, not only depreciation in weight and stale appearance caused by the delays charged, but also any decline in the market, and the charge quoted is subject to the objection that it authorizes a double recovery, in that, to full damages authorized by the first sentence of the charge, the second sentence again authorizes the imposition of damages because of a decline in the market. T. & P. Ry. Co. v. Tomlinson, 157 S. W. 279; Railway Co. v. Lane, 49 Tex. Civ. App. 541, 110 S. W. 530.

We think it unlikely that other questions presented will arise on another trial. It is accordingly ordered that, for the errors noted, the judgment be reversed, and the cause remanded.