**FORT WORTH & D. C. RY. CO. v. LEMONS et al. (No. 2253.)**[*]

(Court of Civil Appeals of Texas. Amarillo. Jan. 30, 1924. Rehearing Denied Feb. 27, 1924.)

1. Carriers ⬕116—Though carrier insurer of delivery of goods, it is not insurer against delay in transit.

Though a common carrier is an insurer of property when received for shipment and will not be excused for its nondelivery unless it be shown that loss was occasioned by an act of God or the public enemy or resulted from the inherent vice in the property itself, the rule is different when the property is transported and delivered and it is sought to hold the carrier liable for injury resulting from delay; delay in such instances being excusable if resulting from causes beyond the control of the carrier.

2. Carriers ⬕123—Rule as to immediate and not remote cause applicable to negligence cases affecting carrier's liability.

The maxim, that "in law the immediate and not the remote cause of any event is regarded," applies in cases of negligence affecting a carrier's liability.

3. Carriers ⬕213—Carrier's negligence held remote not proximate cause of delay.

A delay of a shipment of cattle at a particular point for approximately 22 hours held not such negligence as, concurring with subsequent unprecedented rainfall, would render the carrier liable for damages for delay in delivery, though the shipment would not have encountered the storm had it not been for the prior delay.

4. Carriers ⬕119—Defense of act of God available though not affirmatively reserved in contract.

The defense that loss was occasioned by an act of God is available to a carrier, though the contract does not affirmatively present such limitation on the carrier's liability.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Action by H. L. Lemons and others against the Fort Worth & Denver City Railway Company and another. From judgment for plaintiff, named defendant appeals. Reversed.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Turner & Dooley, of Amarillo, for appellant.

Underwood, Jackson & Johnson, of Amarillo, for appellees.

RANDOLPH, J. This suit was brought by Lemons against the Panhandle & Santa Fé Railway Company and the Ft. Worth & Denver City Railway Company to recover damages to a shipment of cattle. Judgment was rendered by the trial court that the plaintiff take nothing by his suit against the Santa Fé and in plaintiff's favor against the defendant Denver Railway for $1,884.03, from which judgment the defendant Denver Railway has appealed.

The shipment of cattle was made in two cars, over the Santa Fé Railway from Panhandle, Tex., to Amarillo, and over the Denver Railway from Amarillo to Fort Worth. We copy the following statement from appellee's brief as being a substantially correct statement of the evidence upon which the jury returned their verdict:

"The cattle were loaded and left Panhandle at 4:30 p. m. June 17, 1921, and were delivered at Amarillo, 7:35 p. m. same date. The cattle were unloaded at 10:30 p. m. June 17, 1921, at the Amarillo stockyards. They were in A1 condition. The Fort Worth & Denver City Railway Company received advance notice from the Panhandle & Santa Fé Railway Company at 9:30 a. m. June 17, 1921, that the shipment was coming to Amarillo to be carried to Fort Worth; notice was given to the yard clerk for the Fort Worth & Denver City Railway on arrival of the shipment. The cattle were unloaded in the stock pens at Amarillo 10:30 p. m. June 17, 1921, and were reloaded in the cars of the Fort Worth & Denver at 3:40 p. m. the 18th; left Amarillo at 5:30 p. m. the 18th, and arrived at Clarendon at 10:10 same day. The cattle were unloaded in the company's stock pens at Clarendon at 11 a. m. on June 19, 1921. The first train left Clarendon for Fort Worth June 22d at 9:20 a. m. The cattle were not forwarded on the first train out of Clarendon toward Fort Worth after the track was made passable. The cattle were forwarded from Clarendon at 4:05 p. m. on June 24, 1921, and arrived at the end of the run at Childress at 10:20 p. m. same date. The cattle were unloaded from the cars into the chutes at the pens at their destination at Fort Worth at 5:55 p. m. June 25, 1921. At the time in question the Fort Worth & Denver Railway Company was operating from Amarillo toward Fort Worth, one schedule train a day, to leave Amarillo at 2:20 p. m. One freight train left Amarillo on June 17, 1921, at 2 p. m. for Fort Worth. The last freight train on June 17, 1921, toward Fort Worth left at

---

⬕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[*]Writ of error dismissed for want of jurisdiction April 9, 1924.

2:20 p. m. June 17th, the same date. After 7:40 p. m. June 17th the next train going toward Fort Worth was at 9:30 p. m., which was an extra destined to Childress. One of the witnesses, who was a conductor in the employ of the defendant railway company, testified that he took a train out of Amarillo at 9:30 p. m. headed toward Childress, which was an extra train; that he arrived at Childress at 5 a. m. on the morning of June 18th and that there is a regular train division at Childress; that between Childress and Fort Worth they ran extras on those divisions when traffic demanded."

The principal questions presented in this appeal arise upon the plaintiff's claim of delay at Amarillo, upon the delay at Clarendon, upon the question of whether the delay at Clarendon was caused by the act of God, upon whether or not there was causal connection between the delay at Amarillo and the delay at Clarendon, and whether the delay at Amarillo was negligence concurring with the act of God at Clarendon, such as to render defendant Denver Railway liable for any damages occurring to the cattle.

The uncontradicted evidence shows that the rainfall at Clarendon was unprecedented; that the tracks in the yards and on the main line east of Clarendon were washed away in places; that the fill was washed out to a depth of 20 feet in one place and that they had to drive piles and create a temporary bridge through one washed place. It further appears from the testimony of one witness, who had resided at Clarendon for 13 years, that the rain came in "two sections," one about 7 o'clock in the evening and the other about 11 o'clock; that the whole country was flooded and was the hardest within the knowledge of the witness in that country.

[1] We find quite a number of our courts making this distinction: The common carrier is an insurer of property when received for shipment, and the carrier will not be excused for its nondelivery unless it be shown that the loss was occasioned by an act of God or the public enemy or resulted from inherent vice in the property, but that the rule is different when the property is transported and delivered and it is sought to hold the carrier liable for injury resulting from delay. Where the property is actually transported and delivered but the time of delivery was delayed, such delay, if resulting from causes beyond the control of the carrier, may be excused. I. & G. N. Ry. Co. v. Hynes, 3 Tex. Civ. App. 20, 21 S. W. 622. We also cite St. Louis & S. F. Ry. Co. v. Dean (Tex. Civ. App.) 152 S. W. 1127; Ft. Worth & D. C. Ry. Co. v. Morgan (Tex. Civ. App.) 179 S. W. 901; Trout v. G. C. & S. F. Ry. Co. (Tex. Civ. App.) 111 S. W. 220; Eagle Pass Lumber Co. v. Ry. (Tex. Civ. App.) 164 S. W. 402.

However, under either rule of decision, as we have found the facts to be, the defendant Denver Railway Company is not liable for the delay at Clarendon. It is clear that this excessive rainfall could not have been anticipated at the time of the delay at Amarillo.

The plaintiff insists strongly that the delay at Amarillo was the cause of the delay at Clarendon and but for the delay at Amarillo the shipment of cattle would have gone through in time to have avoided the storm at Clarendon and vicinity, and he presents authority supporting his proposition, from which we shall quote.

In the case of G. C. & S. F. Ry. Co. v. McCorquodale, 71 Tex. 41, 9 S. W. 80, there was alleged to have been an agreement between the shippers and an agent of the railway company that the company would furnish cars for the transportation of the shipper's cattle on a certain day. Shippers on the afternoon of the day agreed on had their cattle at the place appointed and tendered them to the railway company for shipment, in accordance with the contract, and the agent instructed them to have their cattle at the pens next morning and cars would be ready to ship them. When the cattle were tendered the next morning at the pens, no cars were furnished, and the railway company refused to receive them, but promised that cars would be furnished at once and repeated this promise up to the afternoon of the 21st—the first tender having been on the 18th—thus inducing the shippers to hold their cattle under herd near the pens until that time, when the agent of the railway company informed them that there was a washout that prevented such shipment. Upon his statement of the case the Commission of Appeals held:

"Under this state of facts, it is contended that the delay in shipping the cattle, and the resulting damage are attributable to the act of God, in the unprecedented flood that broke appellant's road. It appears that this act of God was not committed until the afternoon of the 21st, two days after the breach of contract by appellant, and it also appears that the cattle would have passed the place of the break in the road, had they been shipped at any time after they were tendered and ready to be shipped, up to the morning of the 21st. We do not think that appellant can avoid liability for damages, resulting from its breach of contract, because of an act of God occurring after such breach, and we think the court did not err in so holding."

Plaintiff also cites Railway Co. v. Blackstone & Slaughter (Tex. Civ. App.) 217 S. W. 208. In that case the Supreme Court has granted a writ of error.

Plaintiff further cites 5 R. C. L. § 831, p. 222, which is as follows:

"A common carrier is not exempt, however, from liability for a loss or for damages for delay which results from an act of God, if there is concurrent negligence in the carrier. In other words, an act of God which excuses the carrier must not only be the proximate cause of the loss but the better opinion is that it must be the sole cause."

We cannot take the time or afford to devote the space necessary to an analysis of the many conflicting decisions, but will quote from several authorities which we think represent the great weight of decision in laying down the better rule in such cases as this.

[2] "The maxim that 'In law the immediate and not the remote cause of any event is regarded' applies to cases of negligence." T. & P. Ry. Co. v. Bigham, 90 Tex. 225, 38 S. W. 164.

In the case of Seale v. Railway Co., 65 Tex. 274, 57 Am. Rep. 602, our Supreme Court provides this test:

"If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken."

We copy the following statement of the case and portion of the court's opinion in the case of I. & G. N. Ry. Co. v. Bergman (Tex. Civ. App.) 64 S. W. 99, because we think it embodies the correct rule and gives the proper reasons therefor:

"On the 1st day of September, 1900, appellee shipped three bales of cotton via appellant's line of road, the cotton being consigned to H. Kempner at Galveston, Tex. The shipment originated at Trinity, Tex., a point on appellant's line distant from Galveston about 137 miles. The company was a common carrier of freight for hire, and undertook the carriage in its capacity as such. The cotton reached Galveston late on the evening of September 6th, and was unloaded in the company's yards at that point. It was the company's duty, under its contract of carriage, to deliver same to the compress of the consignee. Such delivery was usually made by means of drays in the employ of the company. It remained in the company's yard until September 8, 1900, when it was lost by reason of the unprecedented storm which occurred on that date. The company was guilty of negligence in failing to forward and deliver the cotton at an earlier date. The trial court submitted the case to the jury on the theory that the company would be liable for the loss if, by the exercise of ordinary care, it could and ought to have delivered the cotton to the consignee prior to the date of the storm.

" * * * Inasmuch as it is undisputed that the loss of the cotton was occasioned by the storm of September 8, 1900, and as that catastrophe comes within the strictest definition of the act of God, it will serve to acquit the company of liability, unless it is made to appear that there is some causal connection recognized by law between the negligence of the company in failing to make timely delivery of the goods and their destruction by the storm, for we regard it as well settled that the doctrine of proximate cause is applicable to cases involving the loss of goods by a carrier, where responsibility must be predicated upon negligence of the carrier. * * *

"What, then, is the true legal relation between the failure on the part of the company to make timely delivery of the cotton and its subsequent destruction by the storm? In order to constitute proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Railway Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. In the course of the opinion in the case just cited Chief Justice Gaines says further: 'Since every event is the result of a natural law, we apprehend the meaning is that the injury is such as may probably happen as the natural consequence of the negligence under the ordinary operation of natural laws.' Again, he says: 'It would seem that there is neither a legal nor a moral obligation to guard against what cannot be foreseen.' In applying the principle to such a state of facts as is presented by the case before us, the courts have with remarkable uniformity held that in a legal sense there is no causal connection between the act of negligence and the destruction by the act of God. In Railway Co. v. Reeves, 10 Wall. 176, 19 L. Ed. 909, the goods in question were injured by an unprecedented flood. Had the carrier forwarded them promptly, they would have been placed beyond the reach of the flood. The court held that the injury was not shown to be the proximate result of the delay, citing with approval Morrison v. Davis, 20 Pa. 171, 57 Am. Dec. 695, and Denny v. Railway Co., 13 Gray, 481, 74 Am. Dec. 645. In Morrison v. Davis, supra, the goods, which were being transported by canal boat, were destroyed by an extraordinary flood at a point on the canal called 'Piper's Dam.' But for the negligence of the carrier in starting on the journey with a lame horse, whereby the progress of the boat was delayed, the shipment would have passed beyond the dam before the storm occurred, and thereby escaped injury. The court held the flood the proximate, and the negligence the remote, cause of the injury. In connection with the declaration that a person is responsible only for such consequences of his negligence as could reasonably be foreseen, the court uses this apt illustration: 'Thus a blacksmith pricks a horse by careless shoeing. Ordinary foresight might anticipate lameness, and some days or weeks of unfitness for use; but it could not anticipate that by reason of the lameness the horse would be delayed in passing through a forest until a tree fell on him, and killed or injured the rider, and such injury would be no proper measure of the blacksmith's liability.'

"An equally apt illustration is suggested by counsel for appellant. Let us suppose the shipment by appellee of three separate lots of cotton from the same point; two on the 1st of September, the third on the 7th. By negligent delay, one of the first shipments arrives in Galveston on the 8th. By greater negligence the arrival of the second shipment is delayed until the 10th. By the exercise of proper care, the last shipment is placed at its destination on the 8th. It would be as consistent to say that the destruction of the last shipment was caused by the carrier's diligence as that the loss of the first was caused by its negligence, and it could be said with equal consistency that the second shipment was saved to its owner by the grosser negligence of the carrier. The truth is that neither the negligence of the carrier in the one case nor its diligence in the other can in any just sense be regarded as a cause either producing or conducing to the loss. As said by Justice Lowry in Morrison's Case, supra: 'The law does not make this delay an

element in testing the inevitableness of the disaster,' citing Parsons v. Hardy, 14 Wend. 215, 28 Am. Dec. 521. In Bigham's Case, supra, Justice Gaines, in discussing whether the injury complained of in that case could have been foreseen by the company, says: 'In our opinion, nothing short of prophetic ken could have anticipated the combination of events which resulted in the injury to the person of plaintiff.' And so we may fairly say in this case. Nothing short of prophetic ken would have enabled the carrier to foresee the coming of the storm, and to foresee whether the delay might not have kept the cotton out of the reach of its fury, instead of placing it in the path of destruction. We therefore hold that mere proof of negligent delay on the part of the company in forwarding and delivering the cotton, and its destruction by the storm while in the company's possession, will not, standing alone, raise the issue of the company's liability. We are aware that in New York and Missouri a different doctrine prevails, and in such case the delay is held the proximate cause, and the storm or flood a mere incident. But, in addition to the cases from Massachusetts and Pennsylvania, cited in support of the doctrine announced, and which has met the approval of the Federal Supreme Court, we find that the doctrine prevails in Alabama, Maine, Michigan, Nebraska, New Mexico, Ohio, Tennessee, and Vermont. 5 Am. & Eng. Enc. Law (2d Ed.) p. 258."

As supporting this view we cite Wells-Fargo & Co. v. Porter (Tex. Civ. App.) 202 S. W. 987; Mistrot-Calahan Co. v. Ry. (Tex. Civ. App.) 209 S. W. 775; American Ry. Express Co. v. Kornblatt (Tex. Civ. App.) 242 S. W. 341; Hunt Bros. v. Ry. (Tex. Civ. App.) 74 S. W. 69 (writ denied); Ry. v. Morgan (Tex. Civ. App.) 179 S. W. 901; Ry. v. Darby et al. (Tex. Civ. App.) 67 S. W. 129; Ry. Co. v. Wood, 99 Ark. 363, 138 S. W. 461.

[3] We cannot hold in this case that the delay at Amarillo was such negligence, concurring with the act of God, as would render the defendant Denver City Railway Company liable for the delay at Clarendon. In 29 Cyc. p. 498, the rule is laid down that—

"The concurring negligence of another cannot transform the remote into the proximate cause or increase the liability of another."

Further:

"Concurrent causes within the rule are causes acting contemporaneously and which together caused the injury, which would not have resulted in the absence of either. * * * The mere fact that the concurrent causes were unforeseen will not relieve from liability for the act of negligence, but when two distinct causes, wholly unrelated, one extraordinary and unexpected, contribute to an injury, one is the proximate and the other the remote cause. * * * An intervening, efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury." 29 Cyc. pp. 498, 499.

[4] The plaintiff objects to the consideration by us of appellant's defense based upon the act of God, because the bill of lading does not affirmatively present the limitation that the defendant was not liable for damage occasioned by an act of God, not intermingled with void provisions.

Such defense not only applies where expressly provided in the contract, but may be presented where the contract is silent—as a matter of law. Neal v. Saunderson, 2 Smedes & M. (Miss.) 573, 41 Am. Dec. 609; Gage et al. v. Tirrell et al., 9. Allen (Mass.) 299; Price v. Hartshorn, 44 N. Y. 94, 4 Am. Rep. 645.

In view of our holding upon the issues discussed, we do not express any opinion upon the question whether or not there was actionable negligence at Amarillo or at Clarendon after reasonable time had been given for the railroad to have been repaired, and believing that the questions decided cover all material error assigned, we overrule all other assignments and reverse the judgment of the trial court for the reasons above stated.

On Motion for Rehearing.

By reason of the analysis of the evidence made by us we still hold that the uncontradicted evidence shows an unprecedented rainfall, which caused the damage at Clarendon, and between Clarendon and Memphis, to the appellant's roadbed and yard at Clarendon.

In view of the rule, as laid down in the Galveston flood cases, we do not think there was any causal connection between the delay at Clarendon and the delay at Amarillo. When we say this we do not mean to find as a matter of fact that there was any delay chargeable to appellant at Amarillo; but under the express limitations of our decisions in this case, we have held, and now say, that as to whether this was actionable negligence at Amarillo or at Clarendon, after reasonable time had been given for the railroad to have been repaired, we do not express any opinion, and this is made to apply to the question as to whether or not there was any delay at Amarillo chargeable to appellant, and we leave these questions of fact to be decided by the trial court and jury on another trial.